Behzad Nahai, Esq. (SBN 112759)
bnahai@nahailawgroup.com
NAHAI LAW GROUP,
A Professional Corporation
10850 Wilshire Boulevard, Suite 1100
Los Angeles, California 90024
(310) 470-2000

and

Stephen R. Mysliwiec (Admission *Pro Hac Vice* forthcoming)
mysliwiecs@millerfriel.com
Benjamin W. Massarsky (Admission *Pro Hac Vice* forthcoming)
massarskyb@millerfriel.com
MILLER FRIEL, PLLC
2445 M Street, NW, Suite 910
Washington, DC 20037
(202) 760-3160

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRIYAR HOSPITALITY MANAGEMENT, L.L.C., an Arizona limited liability company, STEVEN YARI, SHAWN YARI, | ) ) ) ) )   Case No. _____ |
| Plaintiffs, | )   **COMPLAINT FOR DECLARATORY** |
| | )   **RELIEF AND BREACH OF CONTRACT** |
| v. | ) |
| | )   **JURY TRIAL DEMANDED** |
| QBE SPECIALTY INSURANCE COMPANY, | ) ) |
| | ) |
| Defendant. | ) |

**INTRODUCTION**

1.      This action arises out of the wrongful refusal by defendant QBE Specialty Insurance Company's ("QBE") to abide by the terms of its insurance policy covering Triyar Hospitality Management, L.L.C. ("Triyar"), its affiliates, and their officers and directors.

2. Content to accept payment of the $138,750 premium, plus taxes and fees, but not to honor the policy that premium paid for, QBE has cast its insureds aside and left them to satisfy alone a $3,390,802.92 judgment resulting from the collapse of a real estate deal worth $39 million.

3. In the process, QBE has asserted baseless coverage defenses, sought to re-write policy terms, and misrepresented California law—all to avoid honoring its obligations under the insurance policy.

4. This action is necessary to establish Triyar's rights under the subject policy and to hold QBE accountable for its breach of its obligation to defend and indemnify its insurds.

## THE PARTIES

5. Triyar Hospitality Management, L.L.C. is a corporation organized under the laws of Arizona with its principal place of business in Los Angeles, California.

6. Steven Yari is an individual who resides in Los Angeles, California. Steven Yari is an indirect owner and controlling manager of Triyar.

7. Shawn Yari is an individual who resides in Los Angeles, California. Shawn Yari is an indirect owner and controlling manager of Triyar.

8. QBE Specialty Insurance Company is a corporation organized under the laws of North Dakota with its principal place of business in Sun Prairie, Wisconsin.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Triyar, Steven Yari, and Shawn Yari (Steven and Shawn Yari, collectively, the "Yari Brothers"), the plaintiffs in this action, and QBE, the defendant in this action. The amount in controversy exceeds $75,000 without counting interest and costs.

10.     This Court has personal jurisdiction over QBE because QBE has made continuous and systemic contacts with California, including through the issuance of the subject insurance policy covering plaintiffs.

11.     Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred here, including QBE issuing the subject insurance policy to plaintiffs.

**FACTUAL ALLEGATIONS**

**A.  Triyar's Attempted Purchase of the Hyatt Westlake Plaza Hotel**

12.     In May of 2014, Triyar and WSI (II) – HWP, LLC ("WSI") entered into a sale and purchase agreement (the "SPA Agreement") by which Triyar would purchase the Hyatt Westlake Plaza Hotel from WSI for $39 million.

13.     Certain differences arose between the parties, and as a result WSI refused to finalize the sale of the Hyatt Westlake Plaza Hotel.

14.     The parties were unable to resolve their differences, and WSI refused to honor its agreement to sell the Hyatt Westlake Plaza Hotel.

**B.  The WSI Litigation**

15.     On October 6, 2014, Triyar initiated a lawsuit against WSI (the "WSI Matter") to compel the sale of the Hyatt Westlake Plaza Hotel by WSI pursuant to the SPA Agreement.

16.     On September 7, 2016, a fifteen-day bench trial commenced to resolve the WSI Matter.

17.     On October 11, 2016, the court in the WSI Matter issued an oral decision in favor of WSI and against Triyar.

18.     On December 22, 2016, the court in the WSI Matter issued a Statement of Decision in favor of WSI and against Triyar.

19.     Triyar appealed the court's judgment in the WSI Matter.

20.    On January 15, 2019, the California Court of Appeals affirmed the trial court's judgment against Triyar.

**1.  WSI's 2017 Claim for Attorneys' Fees Against Triyar**

21.    On February 21, 2017, WSI asserted a claim against Triyar for attorneys' fees in connection with its status as a prevailing party in the litigation involving Triyar (the "2017 Claim") (attached as Exhibit A).

22.    As justification for its entitlement to attorneys' fees, WSI relied on California state law and the SPA Agreement's provision that a prevailing party in litigation between the parties to the SPA Agreement would be entitled to reasonable attorneys' fees from the other party.  Exhibit A at 8.[1]

23.    The amount of attorneys' fees originally requested by WSI totaled $4,725,203.65. *Id.* at 22.

24.    Triyar objected to WSI's entitlement to attorneys' fees and contested the amount requested by WSI.

25.    On June 2, 2017, the court in the WSI Matter granted in part and denied in part WSI's 2017 Claim.

26.    On June 30, 2017, the court in the WSI Matter issued an amended judgment awarding $2,172,615 in attorneys' fees to WSI.

**2.  WSI's 2019 Claim for Attorneys' Fees Against the Yari Brothers**

27.    Triyar was unable to pay the judgment for attorneys' fees entered against it by the court in the WSI Matter.

---

[1] Citations to the exhibits attached to this complaint refer to their electronic page number and not the internal pagination contained within the exhibit itself.

28.     Accordingly, on June 12, 2019 WSI brought a claim against the Yari Brothers to add them to the June 30, 2017 judgment issued by the Court in the WSI Matter (the "2019 Claim") (attached as Exhibit B).

29.     The 2019 Claim asserted, *inter alia*, that WSI was entitled to collect the June 30, 2017 judgment from the Yari Brothers because the Yari Brothers were "the alter egos of Triyar" and "exhibited sufficient control over not only Triyar but also the underlying transaction and litigation, such that they were virtually represented in the action." Exhibit B at 7.

30.     The 2019 Claim also asserted that "the authority to make decisions on behalf of Triyar rests with the Yari[] [Brothers] alone." *Id.* at 16.

31.     In other words, the 2019 Claim was based on the Yari Brothers' role as controlling and managing officials of Triyar, and on the finding that they were the "sole members and managers" thereof. *Id.* at 18.

32.     The Yari Brothers contested the 2019 Claim, incurring defense costs, and were represented, *inter alia*, by David Grossman and Benjamin R. King of the law firm Loeb & Loeb LLP.

33.     Among his many accolades, Mr. Grossman is the Deputy Chair of Loeb & Loeb's litigation department.

34.     The Yari Brothers were ably defended by Mr. Grossman and Mr. King.

35.     On September 6, 2019, the court in the WSI Matter held in favor of WSI on the 2019 Claim and issued an amended judgment adding the Yari Brothers as judgment debtors.

36.     The court in the WSI Matter ordered the Yari Brothers to pay $2,172,615, along with post-judgment interest, and additional fees in the amount of $196,273.20 incurred by WSI on appeal, plus post-judgment interest.

### 3. The Unsuccessful Appeal of the Judgment in Favor of WSI on the 2019 Claim

37.     The Yari Brothers appealed the judgment for the 2019 Claim to the California Court of Appeals, incurring additional defense costs as a result.

38.     The Yari Brothers were represented in their appeal by David M. Axelrad and Scott P. Dixler of Horvitz & Levy LLP and by David Grossman and Benjamin R. King of the law firm Loeb & Loeb LLP.

39.     The judgment on the 2019 Claim was affirmed on October 22, 2020.

40.     On December 22, 2020, the Yari Brothers sought discretionary review by the California Supreme Court, increasing the defense costs attributable to the 2019 Claim.

41.     The Yari Brothers were represented in their petition for review by David M. Axelrad and Scott P. Dixler of Horvitz & Levy LLP and by David Grossman and Benjamin R. King of the law firm Loeb & Loeb LLP.

42.     On February 24, 2021, the California Supreme Court declined to hear the Yari Brothers' petition for review of the 2019 Claim.

43.     On or about March 31, 2021, the Yari Brothers satisfied the judgment for the 2019 Claim through a payment to WSI in the amount of $3,390,802.92.

44.     On May 21, 2021, Triyar reimbursed the Yari Brothers for their payment of the 2019 Claim.

### C. The QBE Directors and Officers Insurance Policy

45.     QBE issued an insurance policy, number QPL0056676, with a policy period of September 15, 2016 to September 15, 2017 (the "QBE Policy") (attached as Exhibit C).

46.     The QBE Policy is entitled "The Solution" and includes both Directors and Officers ("D&O") and Employment Practices Liability.  Exhibit C at 11, 16.

47.     The QBE Policy states at the top of the "General Terms and Conditions" section that it provides "CLAIMS MADE COVERAGE" which "APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD."   *Id.* at 4

48.     Triyar is a "Company" insured by the QBE Policy.  *Id.* at 27.

49.     The Yari Brothers are "Insured Persons" within the meaning of the QBE Policy and therefore are covered by its terms.  *Id.* at 14-15.

50.     The QBE Policy requires QBE to defend a "Claim" made under the D&O coverage part of the QBE Policy.  *Id.* at 6.  This includes the obligation to reimburse "Defense Costs" incurred by an insured "Company" or by an "Insured Person."

51.     The D&O coverage part of the QBE Policy has a limit of liability of $5 million per Claim and a $5 million aggregate limit.  *Id.* at 11.

52.     The QBE Policy's D&O coverage part provides Side A Coverage for "Loss" to an "Insured Person" that is not indemnified by a "Company."  *Id.* at 12.

53.     The QBE Policy's D&O coverage part provides Side B Coverage for "Loss" to an "Insured Person" that is indemnified by a "Company."  *Id.*

54.     The QBE Policy's D&O coverage part provides Side C Coverage to a "Company" for its own "Loss" under limited circumstances.  *Id.*

55.     There is a $150,000 retention applicable to coverage under Sides B and C of the D&O coverage part of the QBE Policy.  *Id.* at 11.

56.     The QBE Policy is subject to interpretation under the laws of California because the QBE Policy was delivered in California and insured California entities.

57.     The QBE Policy required a premium payment of $138,750, plus taxes and fees, for the coverage it offered.  *Id.* at 4.

58.     The QBE Policy contains a "General Terms and Conditions" section and a D&O coverage part section, both of which include terms for determining coverage.

59.     Side B of the D&O coverage part is intended to provide insurance coverage for losses suffered by an "Insured Person" that a "Company" pays or indemnifies.

60.     Side B of the D&O coverage part states:

The Insurer shall pay, on behalf of a **Company**, **Loss** on account of a **Claim** first made during the **Policy Period** to the extent the **Company** pays or indemnifies an **Insured Person** for such **Loss**.

*Id.* at 12.[2]

61.     The QBE Policy defines a "Company" as:

**Company** means the **Parent Company** and any **Subsidiary**, any foundation, political action committee or charitable trust controlled or sponsored by the **Parent Company** or any **Subsidiary**, and the **Parent Company** or any **Subsidiary** in its capacity as a debtor in possession under United States bankruptcy law.

*Id.* at 10.

62.     Triyar is specifically listed as a "Company" in the QBE Policy.  *Id.* at 27.

63.     In pertinent part, "Loss" is defined by the QBE Policy as:

2.   judgments and settlements, including a judgment or settlement awarding plaintiffs' attorneys fees, provided that with respect to any settlement including plaintiffs' attorneys fees, that portion of the settlement can be demonstrated to be reasonable, taking into consideration the nature of legal action, time and expense involved in prosecuting such action, and the likelihood of a court awarding a similar amount as part of a judgment;

3.   pre and post-judgment interest;

4.   **Defense Costs**;

*Id.* at 15.

64.     The definition of "Loss" explicitly includes a "judgment or settlement" awarding "attorneys [sic] fees."

65.     The QBE Policy defines the term "Claim" in pertinent part to be:

(a) a written demand for monetary or non-monetary (including injunctive) relief, including demands for arbitration, mediation, waiving or tolling of a statute of limitations or **Extradition**;

(b) a civil or criminal proceeding, evidenced by: (i) the service of a complaint or similar pleading in a civil proceeding; or (ii) the filing of an indictment, information or similar document or an arrest in a criminal proceeding; and

---

[2] Capitalized and bolded text reflect the QBE Policy's defined terms.

*Id.* at 14. The QBE Policy further requires that the Claim be asserted "against an **Insured** for a Wrongful Act, including any appeal therefrom." *Id.*

66.     Thus, the QBE Policy contemplates that a "Claim" may be a "written demand for monetary . . . relief" and/or one that is made by "the service of a complaint or similar pleading in a civil proceeding."

67.     Notably, a "Claim" is defined by the actions of a third party against an "Insured Person" or "Company." Accordingly, a "Claim" is a "Claim" under the QBE Policy notwithstanding whether it is ever tendered to QBE.

68.     A "Wrongful Act" is defined broadly by the QBE Policy to include:

any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by: (a) an **Insured Person** in his capacity as such; or (b) by a **Company**; or

*Id.* at 15.

69.     Therefore, according to the QBE Policy, a "Wrongful Act" need not be "wrongful" in the moral or legal sense. To the contrary, it must merely be any "act" which forms the basis of a "Claim" against an "Insured Person" or "Company."

70.     The QBE Policy contemplates that certain "Claims" may be related to one another. In addressing this relationship, the QBE Policy provides that "Related Claims" are deemed a single "Claim" and are considered to have been "first made during the policy period in which the earliest of such Related Claims was either first made or deemed to have been first made" pursuant to the QBE Policy's reporting requirements. *Id.* at 7.

71.     "Related Claims" are defined by the QBE Policy to be "all Claims based upon, arising out of or resulting from the same or related, or having a common nexus of, facts, circumstances or Wrongful Acts." *Id.* at 10.

72.     The QBE Policy's notice and reporting requirements are listed in the "General Terms and Conditions" section of the QBE Policy, not within any of the QBE Policy's insuring agreements. *Id.* at 6.

73.     The QBE Policy's notice and reporting requirements are not labeled or otherwise indicated to be a condition precedent to coverage.

74.     As regards "Claims," the notice and reporting provision in the QBE Policy requires in relevant part:

A.  Notice of any **Claim** under any **Liability Coverage Part** is considered timely when reported to the Insurer as soon as practicable after the **Parent Company's** chief executive officer or chief financial officer first becomes aware of such **Claim**. The Insurer shall not assert that notice of a **Claim** was untimely unless the Insurer is materially prejudiced by the untimely notice.  However, in no event shall any notice be provided later than:

  1.  if the applicable **Liability Coverage Part** expires (or is otherwise terminated) without being renewed with the Insurer, 60 days after the effective date of such expiration or termination; or

  2.  the expiration date of the Extended Reporting Period, if applicable.

*Id.*

75.     Hence, the QBE Policy's notice and reporting requirements expressly contemplate that prejudice to QBE is required should QBE assert any failure of an insured to provide timely notice of a "Claim."

**D.  The QBE Policy Covers WSI's 2019 Claim for Attorney Fees Against the Yari Brothers**

      **1.  D&O Side B Applies to the WSI's 2019 Claim for Attorney Fees Against the Yari Brothers**

76.     D&O Side B of the QBE Policy addresses the situation in which an "Insured Person" suffers a "Loss" and a "Company" indemnifies that "Insured Person" for the "Loss."

77.     Here, the QBE Policy recognizes the Yari Brothers as "Insured Persons."

78.     The Yari Brothers were subject to a "Loss" because they satisfied a judgment against them.

79.     The "Loss" in question resulted from a "Claim" first made during the policy period, because the 2019 Claim and the 2017 Claim are "Related Claims" under the QBE Policy.

80.     Accordingly, the 2019 Claim is deemed by the terms of the QBE Policy to have been made in 2017, during the policy period of the QBE Policy.

81.     Triyar agreed to indemnify the Yari Brothers for their "Loss," that is, for their "Defense Costs" and for the judgment they satisfied.

82.     Therefore, D&O Side B of the QBE Policy applies and covers the 2019 Claim and Triyar's "Loss."

### i.   The 2017 Claim and 2019 Claim for Attorney Fees are "Claims" as Defined by the QBE Policy

83.     Under the QBE Policy, a "Claim" consists of two elements: 1) an action by a third party against an "Insured"; and 2) that the action be taken pursuant to a "Wrongful Act" committed by an "Insured."

84.     The 2017 Claim and 2019 Claim contain both of these elements and meet the requirements of a "Claim" pursuant to the QBE Policy.

85.     Both were "written demand[s]" for "monetary relief" instituted by WSI, because they each sought the payment of attorneys' fees by Triyar and the Yari Brothers, respectively.

86.     Such "written demand[s] for "monetary relief" are one of the qualifying actions a third party may take that constitutes a "Claim" under the QBE Policy.

87.     Additionally, both the 2017 Claim and 2019 Claim were also initiated by WSI through the filing of a "pleading in a civil proceeding."

88.     The filing of a "pleading in a civil proceeding" is another of the qualifying actions that a third party may take which constitutes a "Claim" under the QBE Policy.

89.     Both the 2017 Claim and 2019 Claim were initiated by WSI because of an alleged "Wrongful Act."

90.     The alleged "Wrongful Act" upon which the 2017 Claim was based was Triyar's attempt to compel WSI to sell the Hyatt Westlake Plaza Hotel.

91. The alleged "Wrongful Act" upon which the 2019 Claim was based was Triyar's failure to satisfy the June 30, 2017 judgment for attorneys' fees.

### ii. The 2017 Claim and 2019 Claim for Attorney Fees are "Related Claims" as Defined by the QBE Policy

92. The 2017 Claim and 2019 Claim are "Related Claims" as defined by the QBE Policy because they are "based upon, arising out of or resulting from the same or related, or having a common nexus of, facts, circumstances or Wrongful Acts." Exhibit C at 10.

93. For instance, both the 2017 Claim and 2019 Claim arise out of the attempt by Triyar to compel WSI to sell the Hyatt Westlake Plaza Hotel.

94. Furthermore, both the 2017 Claim and 2019 Claim involve WSI's demand of attorneys' fees related to the WSI Matter.

95. And both the 2017 Claim and 2019 Claim involve the Yari Brothers, first as the directors, initiators, and responsible parties for the WSI Matter, and later as the subject of a personal judgment for payment of attorneys' fees.

96. WSI has even asserted that Triyar and the Yari Brothers are "alter egos," meaning that the 2017 Claim and 2019 Claim are allegedly against the same party. See Exhibit B at 17.

97. It is beyond question that the 2017 Claim and 2019 Claim are inextricably linked as a matter of fact and law such that they are "Related Claims" as defined by the QBE Policy.

### iii. The Failure by Triyar and/or the Yari Brothers to Give QBE Earlier Notice of Their Claim Is Immaterial Unless QBE Can Carry Its Burden of Proving That the Timing of the Notice Substantially Prejudiced QBE

98. That QBE did not receive notice of the 2019 Claim within 60 days of the conclusion of the policy period for the QBE Policy does not preclude the QBE Policy from covering the 2019 Claim.

99. It is the fundamental public policy of California that an insurer seeking to invalidate coverage on the basis of late notice must prove that it suffered "substantial prejudice" resulting

12

from the late notice. *See Pitzer Coll. v. Indian Harbor Ins. Co.*, 8 Cal. 5th 93, 105 (2019). The burden of proof in establishing such prejudice lies with the insurer seeking to invalidate coverage. This is called the "notice-prejudice" rule.

100. QBE suffered no prejudice, let alone substantial prejudice, based on the timing of when it received notice of the 2019 Claim.

101. The Yari Brothers were ably represented by sophisticated counsel from a well-respected law firm who competently contested the 2019 Claim.

102. QBE will not be able to carry its burden of proving that any different counsel that QBE would have hired would have obtained a different result with respect to the 2019 Claim.

103. It is QBE's burden to demonstrate substantial prejudice caused by timing of when it received notice of the 2019 Claim, which QBE is unable to do.

104. Accordingly, the QBE Policy's notice and reporting provision does not bar coverage for the 2019 Claim.

### 2. All Terms and Conditions in the QBE Policy Have Been Met and QBE Cannot Prove That Any Exclusions in the Policy Apply

105. Triyar and the Yari Brothers have met all terms and conditions for coverage required by the QBE Policy.

106. For example, they have paid the $138,750 premium to QBE, plus applicable taxes and fees.

107. QBE has the burden to prove that any exclusions in the QBE Policy apply.

108. QBE is unable to meet this burden because there are no exclusions in the QBE Policy that remove coverage for the 2019 Claim.

### E. QBE's Denial of Coverage

109. Triyar and the Yari Brothers tendered the 2019 Claim to QBE for coverage on November 30, 2020 (attached as Exhibit D).

13

110.    QBE did not accept coverage for the 2019 Claim, but it has instead denied coverage based on arguments that are inconsistent with the QBE Policy's express terms.

### 1. QBE's Initial Justifications for Denying Coverage

111.    QBE first denied coverage for the 2019 Claim by letter dated December 10, 2020 (attached as Exhibit E).

112.    In the December 10, 2020 letter, QBE argued that the 2019 Claim was not a "Claim" under the QBE Policy because the WSI Matter was commenced by Triyar.  Exhibit E at 7.

113.    QBE also asserted that coverage for the 2019 Claim was "not triggered" because notice was provided outside of the 60-day period contemplated by the QBE Policy's notice and reporting provision.  *Id*.

114.    QBE also argued that the 2019 Claim did not allege "Loss" because the judgment against the Yari Brothers resulted from the WSI Matter.  *Id*.

115.    Finally, QBE argued that two exclusions, the "Contract" exclusion and the "Related Party" exclusion, applied to the 2019 Claim.  *Id*. at 7-8.

116.    The "Contract" exclusion in the QBE Policy removes coverage for "Loss" from a "Claim":

Contract - based upon, arising out of or resulting from any liability in connection with any contract or agreement to which a **Company** is a party, provided that this Exclusion D shall not apply to the extent that such **Company** would have been liable in the absence of such contract or agreement;

Exhibit C at 12.

117.    QBE argued that the "Contract" exclusion barred coverage because the "Loss" resulted from a contract, namely the SPA Agreement.  Exhibit E at 7-8.

118.    The "Related Party" exclusion in the QBE Policy removes coverage for "Loss" from a "Claim" that is "brought by, or on behalf of Triyar Companies, LLC or its subsidiaries, affiliates, or directors and officers or any combination."  Exhibit C at 23.

14

119.   QBE argued the "Related Party" exclusion applied to bar coverage for the 2019 Claim because the WSI Matter was brought by Triyar.  Exhibit E at 8.

120.   By letter of December 18, 2020, Triyar and the Yari Brothers responded to the December 10, 2020 denial of coverage letter and contested the five points made therein (attached as Exhibit F).

121.   Triyar and the Yari Brothers explained that the 2019 Claim was a "Claim" under the QBE Policy because it was a "written demand" that was "for monetary or non-monetary" relief, as contemplated by the QBE Policy's definition of "Claim."   Exhibit F at 3.

122.   They also explained in the December 18, 2020 letter that the QBE Policy's notice and reporting provisions do not bar coverage because the QBE Policy is a "claims made" policy that requires, under California law, that QBE demonstrate substantial prejudice in order to deny coverage based on late notice.  *Id*. at 3.  Triyar and the Yari Brothers observed that QBE would be unable to demonstrate such substantial prejudice.  *Id*. at 4.

123.   Triyar and the Yari Brothers also noted that the 2019 Claim implicated a "Loss" under the QBE Policy because the definition of "Loss" includes a "judgment" and lacks any reference to "who instituted the legal action giving rise to the 'Loss.'"  *Id*. at 4.

124.   Finally, Triyar and the Yari Brothers demonstrated that neither of the exclusions referenced in the December 10, 2020 denial letter applied to the 2019 Claim.  For example, they pointed to the fact that the "Contract" exclusion is limited by its terms to coverage sought under Side C of the QBE Policy, but that Triyar and the Yari Brothers sought coverage only under Side B of the QBE Policy.  *Id.* at 4.  They also explained that the "Related Party" exclusion was inapplicable to the 2019 Claim because WSI, and not Triyar, brought the 2019 Claim.  *Id*. at 5.

125.   In the December 18, 2020 letter, Triyar and the Yari Brothers again requested that QBE cover the 2019 Claim.

15

**2.  QBE Engages Outside Counsel and Shifts its Reasons for Denying Coverage**

126.    On January 12, 2021, QBE sent a letter through outside counsel again denying coverage for the 2019 Claim (attached as Exhibit G).

127.    The January 12, 2021 letter abandoned many of the coverage arguments QBE previously asserted, but it raised several new ones.

128.    For example, the January 12, 2021 letter asserted for the first time that the 2019 Claim did not include a "Wrongful Act."  Exhibit G at 3.

129.    QBE also asserted that the 2019 Claim was not a "Claim" because it was not made during the policy period covered by the QBE Policy.  *Id*.

130.    QBE also argued for the first time that the QBE Policy's notice and reporting provision barred coverage notwithstanding any evidence of prejudice to QBE because the "notice-prejudice rule does not apply" to the QBE Policy.  In so arguing, QBE attempted to redefine the QBE Policy from a "claims made" policy to a "claims-made-and-reported" policy.

131.    On information and belief, QBE sought to redefine the QBE Policy into a "claims-made-and-reported" policy because "claims-made-and-reported" policies are not subject to the "notice-prejudice" rule under California law.  *Id*. at 4.

132.    Triyar and the Yari Brother responded to the second denial of coverage by letter dated January 22, 2021 (attached as Exhibit H).

133.    In the January 22, 2021 letter, Triyar and the Yari Brothers explained that the 2019 Claim did involve an alleged "Wrongful Act" as that term is defined by QBE Policy, because a "Wrongful Act" includes any "act," not just one that is considered wrong in a moral or legal sense.  Exhibit H at 3.

134.    Triyar and the Yari Brothers also explained that the 2019 Claim must be considered made during the QBE Policy's policy period because the 2019 Claim is a "Related Claim" to the 2017 Claim, which was made against Triyar during the QBE policy period.  *Id*. at 3.

16

135.   Finally, Triyar and the Yari Brothers corrected QBE's misstatement about the nature of the QBE Policy, explaining that the QBE Policy is not a so-called "claim-made-and-reported" policy. *Id*. at 4-5.

136.   Referring to earlier correspondence with QBE, Triyar and the Yari Brothers also explained that the distinguishing feature of a "claims-made-and-reported" policy is that its insuring agreement contains an explicit requirement that the insurer receive notice of a claim during the policy period in order for the insuring agreement to apply.  And a "claims-made-and-reported" policy often states in capital letters at the beginning of the policy that it is a "claims-made-and-reported" policy.

137.   In contrast, a typical "claims made" policy merely requires that a claim be made against the policyholder during the policy period.  To the extent that "claims made" policies contain notice and reporting requirements, such requirements are not located in the policy's insuring agreement and are not otherwise termed as conditions precedent to coverage.

138.   As observed by Triyar and the Yari Brothers, the QBE Policy does not contain a notice or reporting requirement in any of its insuring agreements.  *Id.* at 5; Exhibit C at 11–12.

139.   Nor does the QBE Policy contain a statement, in all capital letters or otherwise, that it is a "claims-made-and-reported" policy.

140.   QBE responded through counsel by letter on February 2, 2021, repeating its previously-refuted arguments and denying coverage for the 2019 Claim for the third time (attached as Exhibit I).

## COUNT I
### (Declaratory Judgment)

141.   Triyar and the Yari Brothers repeat and reallege the allegations in the preceding paragraphs.

17

142.   Triyar and the Yari Brothers have complied with all applicable terms and conditions of the QBE Policy, including the timely payment of premiums due on the QBE Policy.

143.   QBE is obligated to cover the 2019 Claim pursuant to the terms of the QBE Policy.

144.   Triyar has incurred "Loss" due to the 2019 Claim in an amount to be proven at trial.

145.   QBE has wrongfully denied coverage for the 2019 Claim.

146.   An actionable and justiciable controversy exists between Triyar and the Yari Brothers, on the one hand, and QBE, on the other, concerning the parties' rights and obligations under the Policy, and Triyar and the Yari Brothers are entitled to a declaration with respect to QBE's coverage obligations under the QBE Policy.

147.   Under 28 U.S.C. § 2201, this Court should enter a declaratory judgment in favor of the Triyar and the Yari Brothers and against QBE declaring that the Triyar and the Yari Brothers are entitled to coverage for the 2019 Claim under the QBE Policy and, under 28 U.S.C. § 2202, any other relief this Court deems proper.

## COUNT II
**(Breach of Contract)**

148.   Triyar and the Yari Brothers repeat and reallege the allegations in the preceding paragraphs.

149.   The QBE Policy constitutes a valid and enforceable written contract between Triyar and the Yari Brothers, on the one hand, and QBE, on the other.

150.   Triyar and the Yari Brothers have complied with all applicable terms and conditions of the QBE Policy, including the timely payment of premiums due on the QBE Policy.

151.   Pursuant to the terms of the QBE Policy, QBE must cover Triyar's "Loss" from the 2019 Claim.

152.   QBE has breached its obligations under the QBE Policy by wrongfully denying coverage for the 2019 Claim.

153.    Triyar has been damaged and continues to sustain damages due to QBE's breach of the QBE Policy, in an amount to be determined at trial.

154.    As a result of QBE's breach of the QBE Policy, Triyar and the Yari Brothers request entry of judgment for breach of contract, awarding payment of damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Triyar and the Yari Brothers pray for judgment against QBE as follows:

(1)    A declaration from the Court that QBE is obligated to pay for the "Loss" incurred by Triyar for the 2019 Claim and granting such further relief as the Court deems proper;

(2)    For special and consequential damages against QBE for breach of contract in an amount in excess of $75,000 to be proven at trial;

(3)    For pre- and post-judgment interest as provided by law;

(4)    An award of attorney's fees and costs of suit incurred; and

(5)    For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Triyar and the Yari Brothers demand trial by jury on all issues so triable.

DATED this 28th day of May 2021.

Behzad Nahai, Esq. (SBN 112759)
bnahai@nahailawgroup.com
NAHAI LAW GROUP,
A Professional Corporation
10850 Wilshire Boulevard, Suite 1100
Los Angeles, California 90024
(310) 470-2000

_____/s/ Behzad Nahai_____

and

Stephen R. Mysliwiec (Admission *Pro Hac Vice* forthcoming)
mysliwiecs@millerfriel.com
Benjamin W. Massarsky (Admission *Pro Hac Vice* forthcoming)
massarskyb@millerfriel.com
MILLER FRIEL, PLLC
2445 M Street, NW, Suite 910
Washington, DC 20037
(202) 760-3160

Attorneys for Plaintiffs

20