# Joint Appendix
# Exhibit 1

**EXHIBIT**
0003
M.Scully
03/21/2022



# Exhibit C

# QBE® Specialty Insurance Company
A Stock Company



## _The Solution_ for Management Liability

**Home Office:**

c/o CT Corporation
314 East Thayer Avenue
Bismarck, North Dakota 58501

**Administrative Office:**

Wall Street Plaza
88 Pine Street
New York, New York 10005
1-877-772-6771

QBE and the links logo are registered service marks of QBE Insurance Group Limited.

QBBP-3034 (05-14)

JA1_002

**This policy consists of:**   Declarations
One or more coverage parts.
A coverage part consists of:
— One or more coverage forms
— Applicable forms and endorsements

**QBE Specialty Insurance Company**

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Robert V. James
President

Jose Ramon Gonzalez, Jr.
Secretary

JA1_003

**POLICY NUMBER: QPL0056676**



QBBP-3004 (09-14)

*The Solution*
General Terms and Conditions Declarations

**QBE Specialty Insurance Company**
Wall Street Plaza, 88 Pine Street, New York, New York 10005
Home Office: c/o CT Corporation System, 314 East Thayer Avenue, Bismarck, North Dakota 58501

**THE LIABILITY COVERAGE PARTS PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**

**Item 1**: Parent Company: Stockdale Management LLC

         Mailing Address: 10850 Wilshire Blvd, Suite 1050
                                Los Angeles, CA 90024

**Item 2**: Policy Period: From: September 15, 2016 To: September 15, 2017
                                 At 12:01 A.M. Standard Time at the mailing address stated in Item 1

**Item 3**: Limit of Liability: $5,000,000 Combined Maximum Aggregate Limit of Liability for Liability Coverage Parts

**Item 4**: Coverage Parts: Directors & Officers and Entity Liability
                                Employment Practices Liability

**Item 5**: A. Notice to Insurer of a Claim or circumstance:     B. All Other Notices to Insurer:

         QBE Specialty Insurance Company              QBE Specialty Insurance Company
         Attn: The Claims Manager                       Attn: Underwriting
         Wall Street Plaza                                  Wall Street Plaza
         88 Pine Street, 18th Floor                      88 Pine Street, 18th Floor
         New York, New York 10005                   New York, New York 10005
         Telephone: (877) 772-6771                    Telephone: (877) 772-6771
         Email: professional.liability.claims@us.qbe.com     Email: MLPLadmin@us.qbe.com

**Item 6**: Extended Reporting Period
         Premium: 150% of annual premium
         Length: One Year

**Item 7**: Premium: $138,750

In witness whereof, the Insurer has caused this Policy to be executed, but it shall not be valid unless also signed by a duly authorized representative of the Insurer.

September 16, 2016
Date

JA1_004



In consideration of the payment of the premium, the Insurer and the **Insureds** agree as follows:

## I. PREAMBLE

The insurance coverages offered in this Policy are part of a portfolio of insurance coverages, consisting of this General Terms and Conditions ("GTC") and any individual **Liability Coverage Parts** and **Non-Liability Coverage Parts** purchased, as stated in Item 4 of the Declarations of this GTC. The type of coverage provided by each of the **Liability Coverage Parts** and **Non-Liability Coverage Parts** are identified in each particular Coverage Part. Unless expressly stated to the contrary, the terms, conditions and limitations in this GTC apply to the entire Policy, whereas the terms, conditions and limitations of each individual Coverage Part only apply to that particular Coverage Part. In the event of a conflict between any terms, conditions or limitations of the GTC and any terms, conditions and limitations of any individual Coverage Part, the terms, conditions and limitations of the individual Coverage Part shall control.

## II. EXCLUSIONS

No coverage shall be provided under any **Liability Coverage Part** for **Loss** on account of that portion of a **Claim**:

A. Bodily Injury/Property Damage - for bodily injury, mental anguish, emotional distress, humiliation, sickness, disease or death of any person or damage to or destruction of any tangible property, including loss of use thereof, whether or not such property is damaged or destroyed;

B. Conduct - based upon, arising out of or resulting from any deliberate fraud, deliberate criminal act or deliberate violation of any statute or regulation, or any illegal profit or remuneration, by an **Insured**, established by a final, non-appealable adjudication adverse to such **Insured** in any underlying action, and the Insurer shall not utilize a declaratory action or proceeding brought by or against the Insurer to establish such final, non-appealable adjudication;

C. ERISA - for any violation of the responsibilities, obligations or duties imposed by **ERISA** or for any functions identified in **ERISA** Section 3(21)(A) as not being the functions of a fiduciary, and commonly referred to as "settlor" functions;

D. Pending or Prior Proceedings - based upon, arising out of or resulting from an action, proceeding or **Claim** commenced against an **Insured** pending on or prior to the Pending or Prior Proceedings Date stated in the Declarations of each applicable **Liability Coverage Part**;

E. Pollution - based upon, arising out of or resulting from any:

   1. discharge, emission, release, dispersal or escape of any **Pollutants** or any threat thereof;

   2. treatment, removal or disposal of any **Pollutants**; or

   3. regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**,

   including any **Claim** for financial loss to a **Company**, its securityholders or its creditors based upon, arising from or in consequence of any matter described in paragraphs 1, 2, or 3 above;

F. Prior Notice - based upon, arising out of or resulting from any claim reported, or any circumstance reported and accepted, under the insurance policy (including any policies of which such policy is a renewal policy) replaced by this Policy; and

G. Wage and Hour - based upon, arising out of or resulting from any violation of the responsibilities, obligations or duties imposed by any law governing wage, hour or payroll, including the Fair Labor Standards Act;

Exclusions D and F above shall not apply where this Policy is a renewal of a policy issued by the Insurer to the **Parent Company**.

With respect to all Policy exclusions, no conduct or knowledge of any **Insured** shall be imputed to any other **Insured Person**, and solely with respect to Exclusion B, only the conduct or knowledge of any past, present or future chief executive officer or chief financial officer of a **Company** shall be imputed to such **Company** and its **Subsidiaries**.

## III. RETENTION OR DEDUCTIBLE

A. Any Retention or Deductible applicable to any Coverage Part shall apply as set forth in each Coverage Part and in the amount(s) stated in the Declarations of each Coverage Part. If different parts of a single **Claim** are

JA1_005

subject to different Retentions or Deductibles, then the total amount of **Loss** applied to the applicable Retentions or Deductibles shall not exceed the largest applicable Retention or Deductible.

B.   No Retention shall apply to any **Loss** for which an **Insured Person** is not indemnified by a **Company** because of such **Company's Financial Impairment**.

## IV.   LIMIT OF LIABILITY

A.   The Combined Maximum Aggregate Limit of Liability, stated in Item 3 of the Declarations of this GTC, represents the maximum amount payable under all **Liability Coverage Parts** during the **Policy Period** for all **Liability Coverage Parts** combined.

B.   The Limit of Liability, stated in Item 2 of the Declarations of each **Liability Coverage Part**, represents the maximum amount payable under each **Liability Coverage Part** during the **Policy Period** for any one **Claim** and in the aggregate as set forth in each such **Liability Coverage Part**.

C.   **Defense Costs** are part of, and not in addition to, the Limit of Liability of each **Liability Coverage Part**.

D.   The remaining portion of each of the limits of liability described above shall be the limits of liability available during any Extended Reporting Period applicable to any Coverage Part.

## V.   REPORTING

A.   Notice of any **Claim** under any **Liability Coverage Part** is considered timely when reported to the Insurer as soon as practicable after the **Parent Company's** chief executive officer or chief financial officer first becomes aware of such **Claim**. The Insurer shall not assert that notice of a **Claim** was untimely unless the Insurer is materially prejudiced by the untimely notice. However, in no event shall any notice be provided later than:

1.   if the applicable **Liability Coverage Part** expires (or is otherwise terminated) without being renewed with the Insurer, 60 days after the effective date of such expiration or termination; or

2.   the expiration date of the Extended Reporting Period, if applicable.

B.   Notice requirements involving any **Non-Liability Coverage Part** shall be in accordance with the reporting requirements set forth in such **Non-Liability Coverage Part**.

C.   Notice of any circumstance which could give rise to a **Claim** under any **Liability Coverage Part** is optional. If an **Insured** elects to report any circumstance which could give rise to a **Claim**:

1.   such notice shall include information regarding the nature of any **Wrongful Acts** or alleged or potential damages and the names of any actual or potential defendants; and

2.   any **Claim** that may subsequently arise out of a reported circumstance shall be deemed to have been first made during the **Policy Period** in which such circumstance was first reported.

## VI.   DEFENSE AND SETTLEMENT

A.   With respect to any **Claim** under any **Liability Coverage Part**, the Insurer shall have the right and duty to defend any **Claim**, unless otherwise specifically stated in a particular **Liability Coverage Part**. The Insurer shall have such right and duty to defend even if any of the allegations in such **Claim** are groundless, false or fraudulent. Any such duty to defend shall cease upon exhaustion of the applicable Limit of Liability.

B.   With respect to any **Claim** under any **Liability Coverage Part**:

1.   the **Insured** shall:

(a)   not agree to any settlement, stipulate to any judgment, incur any **Defense Costs**, admit any liability or assume any contractual obligation, without the Insurer's prior written consent, provided that, unless otherwise stated in a particular **Liability Coverage Part**, the **Insured** may settle any **Claim**, without the Insurer's prior written consent, where the amount of such settlement, including **Defense Costs**, does not exceed the applicable Retention or Deductible;

(b)   not do anything that could prejudice the Insurer's position or its potential or actual rights of recovery; and

(c)   agree to provide the Insurer with all information, assistance and cooperation which the Insurer may reasonably require,

provided that the failure of any **Insured** to comply with any of the requirements in paragraphs (a) - (c) above, shall not impair the rights of any **Insured Person** under this Policy; and

2.   the Insurer:

JA1_006

(a) may make any investigation it deems reasonably necessary and may, with the consent of the **Insureds**, make any settlement of any **Claim** it deems appropriate; and

(b) shall not be liable for any such settlement, stipulation, incurred **Defense Costs**, admission or assumed obligation to which it has not given its prior written consent, and the Insurer shall not unreasonably withhold such consent.

## VII. ALLOCATION

If in any **Claim**, the **Insureds** who are afforded coverage for a **Claim** incur **Loss** that is covered by this Policy and loss that is not covered by this Policy because such **Claim** includes both covered and uncovered matters, 100% of **Defense Costs** incurred by such **Insured** shall be covered **Loss**, and all loss other than **Defense Costs** shall be allocated between covered **Loss** and uncovered loss based upon the relative legal exposures of the parties to such matters.

## VIII. TREATMENT OF RELATED CLAIMS

All **Related Claims** shall be deemed a single **Claim** first made during the policy period in which the earliest of such **Related Claims** was either first made or deemed to have been first made in accordance with Section V. REPORTING above.

## IX. SUBROGATION

A. In the event of any payment under this Policy, the Insurer shall be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery, and the **Insureds** shall take all reasonable actions to secure and preserve the Insurer's subrogation rights.

B. In no event shall the Insurer exercise any subrogation right against an **Insured Person**. In any subrogation action against a **Company**, it is agreed that each **Company** agrees to fulfill any indemnification obligations to the fullest extent permitted by law and any contract or agreement providing an indemnification obligation exceeding any such law.

C. If the Insurer recovers, either through subrogation or recoupment, any portion of an amount paid under this Policy, the Insurer shall reinstate the applicable limit of liability with any amounts recovered up to such amount paid, less any costs incurred by the Insurer in its recovery efforts.

## X. EXTENDED REPORTING PERIOD

With respect to all **Liability Coverage Parts**:

A. If this Policy does not renew, or terminates other than for non-payment of premium, the **Insureds** shall have the right to purchase an ERP for the premium and time period stated in Item 6 of the Declarations. In the event of the non-renewal or termination of one or more **Liability Coverage Parts** of this Policy, the **Insureds** may purchase an ERP solely as respects the **Liability Coverage Part(s)** that has been non-renewed or terminated.

B. The right to an ERP shall lapse unless written notice of election to purchase such ERP, together with payment of the specified premium, is received by the Insurer within 30 days after the effective date of non-renewal or termination of the Policy. In the event the **Parent Company** elects not to purchase an ERP and an individual **Insured** or group of **Insureds** elects to purchase such ERP, such ERP shall only apply to **Claims** against such **Insured** or group of **Insureds**.

C. The premium for the ERP shall be deemed fully earned at the inception of the ERP.

D. Any ERP purchased shall become part of the **Policy Period**, extending such **Policy Period** to the expiration of the time period stated in Item 6 of the Declarations, but only with respect to **Loss** on account of a **Claim** for a **Wrongful Act** taking place before the effective date of non-renewal or termination.

## XI. CHANGES IN EXPOSURE

A. New Companies and Old Companies

This Policy's treatment of **Subsidiaries** shall be as stated below and as supplemented by any individual Coverage Part.

Any **Insured** of a **Subsidiary**:

1. acquired before or during the **Policy Period** is eligible for coverage under any:

(a) **Liability Coverage Part**, but only for **Loss** on account of a **Claim** for a **Wrongful Act** which occurs after the date of such acquisition; and

JA1_007

(b) **Non-Liability Coverage Part**, but only after the effective date of such acquisition, and with respect to the Crime Coverage Part, subject to Section VIII. Other Insurance of such Coverage Part.

2. ceasing to be a **Subsidiary** before or during the **Policy Period** is eligible for coverage under any:

(a) **Liability Coverage Part**, but only for **Loss** on account of a **Claim** for a **Wrongful Act** which occurs while such entity was a **Subsidiary**; and

(b) **Non-Liability Coverage Part**, as provided in such **Non-Liability Coverage Part**, but such **Subsidiary** and its **Insureds** shall cease to be **Insureds** under such **Non-Liability Coverage Part** as of the date of such cessation.

B. Acquisition of the **Parent Company**

In the event of a **Change in Control** of the **Parent Company** during the **Policy Period**:

1. any **Liability Coverage Part** shall remain in force until the expiration of the **Policy Period**, but only for any **Claim** for a **Wrongful Act** which occurs prior to such acquisition;

2. the entire premium for this Policy shall be deemed fully earned as of the effective date of such **Change in Control**; and

3. the **Parent Company** shall be entitled to receive a quote for an extension of the **Liability Coverage Parts** ("Run-Off Coverage") solely for **Claims** for **Wrongful Acts** which occurred prior to a **Change in Control**. Coverage offered pursuant to such quote shall be subject to additional or different terms and conditions and payment of additional premium. Any Run-Off Coverage purchased shall replace any Extended Reporting Period provided under Section X. EXTENDED REPORTING PERIOD.

## XII. NOTICE

A. All notices to the Insurer under this Policy of any event, loss, **Claim** or circumstances which could give rise to a **Claim** shall be given in writing to the address listed in Item 5A of the Declarations, and any such notice shall be deemed notice under the Policy in its entirety.

B. All other notices to the Insurer under this Policy shall be given in writing to the address listed in Item 5B of the Declarations.

C. Any notice under this Policy shall be effective on the date of mailing or receipt by the Insurer, whichever is earlier.

## XIII. TERMINATION OF POLICY

This Policy shall terminate at the earliest of:

A. 20 days after receipt by the **Parent Company** of written notice from the Insurer of termination for non-payment of premium;

B. expiration of the **Policy Period**; or

C. surrender of the Policy to the Insurer by the **Parent Company** or notice to the Insurer by the **Parent Company** stating when such cancellation will take effect, and in either case any returned premium shall be computed on a pro rata basis.

## XIV. REPRESENTATIONS, SEVERABILITY AND NON-RESCINDABLE COVERAGE

A. In issuing this Policy, the Insurer has relied upon the information and representations in the **Application** as being true and accurate, and the **Application** is the basis for, and considered incorporated into, this Policy.

B. The **Application** shall be construed as a separate request for coverage by each **Insured**, without any knowledge possessed by an **Insured** being imputed to any other **Insured Person**.

C. If the **Application** contains any misrepresentation made with the actual intent to deceive or which, for reasons other than simple negligence or oversight, materially affect the Insurer's acceptance of the risk or the hazard assumed, the Insurer shall not be liable for **Loss** on account of any **Claim** based upon, arising out of or resulting from either of such misrepresentations:

1. with respect to any **Insured Person** who had actual knowledge of any misrepresentation described in paragraph C above, and the Insurer can demonstrate that with such actual knowledge, such **Insured Person** reasonably believed that a **Claim** would arise from such misrepresentation;

2. with respect to any **Company**, if the **Insured Person** described in paragraph 1 above is a past or present chief executive officer or chief financial officer of the **Parent Company**.

JA1_008

D. The Insurer shall not be entitled under any circumstances to void or rescind this Policy with respect to any **Insured**.

## XV. EFFECT OF BANKRUPTCY

Bankruptcy or insolvency of any **Insured** shall not relieve the Insurer of its obligations nor deprive the Insurer of its rights or defenses under this Policy.

## XVI. WORLDWIDE TERRITORY

This Policy shall apply anywhere in the world, and any reference to laws, however described, shall include all U.S. federal, state and local statutory laws, all amendments to and rules and regulations promulgated under any such laws, common law, and any equivalent body of law anywhere in the world, unless specifically stated to the contrary.

## XVII. ROLE OF THE PARENT COMPANY

The **Parent Company** shall act on behalf of each **Insured** with respect to paying premiums, receiving any return premiums, agreeing to endorsements to this Policy and the giving or receiving of any notice provided for in this Policy (except notices of a **Claim** or circumstance which could give rise to a **Claim** or notice to apply for an ERP).

## XVIII. VALUATION AND FOREIGN CURRENCY

All premiums, limits, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If any element of **Loss** under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States of America dollars at the exchange rate published in The Wall Street Journal on the date the element of **Loss** is due.

## XIX. ALTERATION, ASSIGNMENT AND HEADINGS

A. Any change in or modification of this Policy or assignment of interest under this Policy must be agreed to in writing by the Insurer.

B. The descriptions and headings and sub-headings of this Policy are solely for convenience, and form no part of the terms, conditions and limitations of coverage.

## XX. ESTATES, HEIRS, LEGAL REPRESENTATIVES, ASSIGNS, SPOUSES AND DOMESTIC PARTNERS

With respect to any **Liability Coverage Part**, **Insured Person** shall include:

A. the estate, heirs, legal representatives or assigns of any **Executive**, if such **Executive** is deceased, legally incompetent, insolvent or bankrupt; and

B. the lawful spouse or domestic partner of any **Executive** solely by reason of such spouse's or domestic partner's: 1. status as such; or 2. ownership interest in property which a claimant seeks as recovery for an alleged **Wrongful Act** of such **Executive**,

provided that no coverage shall apply with respect to loss arising from an act, error or omission by any estate, heir, legal representative, assign, spouse or domestic partner of an **Insured Person**.

## XXI. TRADE SANCTIONS

This insurance coverage does not apply to the extent that trade or economic sanctions of any country prohibit the insurer or any member of the insurer's group from providing insurance coverage.

## XXII. GLOSSARY

The following terms shall have the meaning ascribed to such terms in each applicable Coverage Part: **Claim**, **Defense Costs**, **Insured**, **Insured Person**, **Loss** and **Wrongful Act**.

A. **Application** means where provided to the Insurer, the application and any accompanying documentation submitted to the Insurer for this Policy or any documentation submitted to the Insurer in connection with the underwriting of this Policy.

B. **Change in Control** means:

1. the **Parent Company's** merger with, or acquisition by, another entity or the acquisition of all or substantially all of its assets by another entity, such that the **Parent Company** is not the surviving entity; or

2. when a person or entity or group of persons or entities acting in concert, acquires securities or voting rights which result in ownership or voting control by such person(s) or entity(ies) of more than 50% of the

JA1_009

outstanding securities or voting rights representing the present right to vote for or appoint directors or **Managers** of the **Parent Company**.

C. **Company** means the **Parent Company** and any **Subsidiary**, any foundation, political action committee or charitable trust controlled or sponsored by the **Parent Company** or any **Subsidiary**, and the **Parent Company** or any **Subsidiary** in its capacity as a debtor in possession under United States bankruptcy law.

D. **Employee** means any natural person whose labor or service was, is or will be engaged and directed by a **Company**, including a part-time, seasonal, leased and temporary employee, intern or volunteer. **Employee** does not include an independent contractor.

E. **ERISA** means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA")).

F. **Executive** means any natural person who was, now is or shall become:

1. a duly elected or appointed director, officer, **Manager**, trustee, regent, governor, risk manager, comptroller or in-house general counsel of any **Company** organized in the United States of America, or in a functionally equivalent or comparable role to any of the foregoing; or

2. a holder of a functionally equivalent position or comparable role to those described in paragraph 1 above in a **Company** that is organized in a jurisdiction other than the United States of America, including any position on an advisory board or committee.

G. **Extradition** means any formal process by which an **Insured** located in any country is or is sought to be surrendered to any other country for trial or otherwise to answer any criminal accusation, including the execution of an arrest warrant where such execution is an element of such process.

H. **Financial Impairment** means the status of a **Company** resulting from: 1. the appointment by a state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate such **Company**; or 2. such **Company** becoming a debtor in possession under United States bankruptcy law.

I. **Liability Coverage Part** means any Coverage Part identified in this Policy as a "Liability Coverage Part" within the heading to such Coverage Part or providing third party liability coverage in such Coverage Part.

J. **Manager** means any natural person, who was, now is, or shall become, a manager, member of the Board of Managers or equivalent executive of a **Company** that is a limited liability company.

K. **Non-Liability Coverage Part** means any Coverage Part or insuring clause in this Policy that does not provide any third party liability coverage.

L. **Parent Company** means the entity named in Item 1 of the Declarations.

M. **Policy Period** means the period of time stated in Item 2 of the Declarations of this GTC (subject to any termination in accordance with Section XIII. TERMINATION OF POLICY) and the ERP, if applicable.

N. **Pollutants** means any solid, liquid, gaseous or thermal irritants or contaminants, including smoke, soot, vapor, fumes, acids, chemicals, alkalis, asbestos, asbestos products or waste. Waste includes materials to be reconditioned, recycled or reclaimed.

O. **Related Claims** means all **Claims** based upon, arising out of or resulting from the same or related, or having a common nexus of, facts, circumstances or **Wrongful Acts**.

P. **Subsidiary** means:

1. any entity while more than 50% of the outstanding securities or other equity ownership, representing the present right to vote for election of, or to appoint, directors, **Managers**, or the foreign equivalent of any such directors or **Managers** of such entity, are owned or controlled by the **Parent Company** directly or indirectly through one or more **Subsidiaries**; or

2. any entity while the **Parent Company** has the right, pursuant to either written contract or the bylaws, charter, operating agreement or similar documents of a **Company**, to elect or appoint a majority of the Board of Directors of a corporation or **Managers**.

**JA1_010**

**POLICY NUMBER: QPL0056676**



*The Solution* for Directors & Officers and Entity Liability
Coverage Part Declarations

**QBE Specialty Insurance Company**
Wall Street Plaza, 88 Pine Street, New York, New York 10005
Home Office:  c/o CT Corporation System, 314 East Thayer Avenue, Bismarck, North Dakota  58501

**THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD.  THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**

**Item 1**:    Parent Company:      Stockdale Management LLC

**Item 2**:    A.  Limit of Liability

          $5,000,000 per Claim
          $5,000,000 in the aggregate

        B.  Securityholder Derivative Demand Investigation Limit: $250,000

**Item 3**:    Additional Limit for Non-Indemnifiable Loss: $250,000

**Item 4**:    Retention:

        A.  Insuring Clause B: $150,000 per Claim
        B.  Insuring Clause C: $150,000 per Claim

**Item 5**:    Pending or Prior Proceedings Date:  N/A

QBE and the links logo are registered service marks of QBE Insurance Group Limited.

JA1_011



**The Solution** for Private Company
Directors & Officers and Entity Liability
Coverage Part

In consideration of the payment of the premium and subject to the General Terms and Conditions, the Insurer and the **Insureds** agree as follows:

## I.   INSURING CLAUSE

A.  Side A - Non-Indemnifiable Loss Coverage for Insured Persons

The Insurer shall pay, on behalf of an **Insured Person**, **Loss** on account of a **Claim** first made during the **Policy Period**, to the extent that such **Loss** has not been paid or indemnified by any **Company**.

B.  Side B - Corporate Reimbursement Coverage for Indemnification of Insured Persons

The Insurer shall pay, on behalf of a **Company**, **Loss** on account of a **Claim** first made during the **Policy Period** to the extent the **Company** pays or indemnifies an **Insured Person** for such **Loss**.

C.  Side C - Entity Coverages

The Insurer shall pay, on behalf of a **Company**, **Loss** on account of a **Claim**, and **Defense Costs** on account of a **Securityholder Derivative Demand Investigation**, first made during the **Policy Period**.

## II.  EXCLUSIONS

In addition to the Exclusions set forth in Section II. EXCLUSIONS of the GTC, no coverage shall be provided under this Coverage Part for **Loss** on account of that portion of a **Claim**:

A.  Insured v. Insured - brought by, or on behalf of:

1.  a **Company** against another **Company**;

2.  a **Company** or **Outside Entity** against an **Insured Person**;

3.  an **Insured Person**, in any capacity, against an **Insured**,

provided that:

(a)  Exclusion A2 above shall not apply to a **Claim** brought: (i) outside the United States of America, Canada or their territories or possessions; (ii) while the **Parent Company** or **Outside Entity** is in **Financial Impairment**; (iii) as a securityholder derivative action; or (iv) while an **Insured Person** is no longer serving in his capacity as such; and

(b)  Exclusion A3 above shall not apply to any **Claim**: (i) for employment-related **Wrongful Acts** against an **Insured Person**; (ii) for contribution or indemnity; (iii) brought by an **Insured Person** who has ceased serving in his capacity as such for at least 1 year; or (iv) brought by, on behalf of or with the participation of a whistleblower;

B.  Publicly Traded Securities - based upon, arising out of or resulting from any public offering of, or purchase or sale of, equity or debt securities issued by any **Company** or **Outside Entity**, provided that this Exclusion B shall not apply to any **Claim** based upon, arising out of or resulting from the **Company's**: 1. securities that are not required to be registered; 2. failure to undertake or complete an initial public offering or sale of its securities; or 3. preparation for any public offering, including any "road show" presentation to potential investors or other similar presentation;

Exclusions C - I below shall only apply to Insuring Clause C, Side C - Entity Coverages:

C.  Antitrust - based upon, arising out of or resulting from anti-trust, price fixing or discrimination, restraint of trade, monopolization, unfair trade practices, predatory pricing or false advertising;

D.  Contract - based upon, arising out of or resulting from any liability in connection with any contract or agreement to which a **Company** is a party, provided that this Exclusion D shall not apply to the extent that such **Company** would have been liable in the absence of such contract or agreement;

E.  Employment Practices - based upon, arising out of or resulting from any employment-related **Wrongful Act**;

F.  Intellectual Property - based upon, arising out of or resulting from any infringement of copyright, patent, trademark, trade dress, trade name or service mark or any misappropriation of ideas, trade secrets or other intellectual property rights;

**JA1_012**

G. Personal Injury - based upon, arising out of or resulting from any defamation (including libel and slander), disparagement, wrongful entry or eviction, invasion of privacy, false arrest, false imprisonment, assault, battery, loss of consortium, malicious use or abuse of process or malicious prosecution.

H. Professional Services - based upon, arising out of or resulting from the performance of or failure to perform **Professional Services**; and

I. Third Party Discrimination or Harassment - based upon, arising out of or resulting from any discrimination against, or harassment of, any third party.

With respect to this Coverage Part, the following exceptions shall apply to Section II. EXCLUSIONS of the GTC:

1. Exclusion A. Bodily Injury/Property Damage shall not apply to any **Claim** under Insuring Clause A; and

2. Exclusion E. Pollution shall not apply to any **Claim**: (a) under Insuring Clause A; or (b) brought by a securityholder of a **Company** against an **Insured Person**.

## III. RETENTION

No retention shall apply to any **Claim** under Insuring Clause A or to any **Securityholder Derivative Demand Investigation**.

## IV. LIMIT OF LIABILITY

A. The Securityholder Derivative Demand Investigation Limit stated in Item 2B of the Declarations of this Coverage Part represents the maximum amount payable under this Coverage Part during the **Policy Period** for **Defense Costs** on account of all **Securityholder Derivative Demand Investigations**, which amount shall be part of, and not in addition to, the Limit of Liability stated in Item 2A of such Declarations.

B. The Additional Limit for Non-Indemnifiable Loss stated in Item 3 of the Declarations of this Coverage Part represents an additional limit of liability available solely to an **Executive** or natural person **General Partner** for **Loss** on account of a **Claim** covered under Insuring Clause A. This additional limit of liability shall be in addition to and not part of, and excess of any other insurance written specifically as excess of, the Limit of Liability stated in Item 2A of such Declarations.

## V. ADVANCEMENT

A. If a **Company** fails to respond to an **Insured Person's** request for indemnification within 60 days of the **Insured Person's** request to the **Company** for such indemnification, then upon the reporting of the **Claim**, the Insurer shall advance **Defense Costs** and any other incurred **Loss** until such time that the **Company** accepts the **Insured's** request for indemnification or the Limit of Liability set forth in Item 2A of the Declarations of this Coverage Part has been exhausted, whichever occurs first. In any other **Claim**, the Insurer shall advance **Defense Costs** on a current basis, but no later than 60 days after receipt of the legal bills and any supporting documentation.

B. If it is determined by a final adjudication that any advanced **Defense Costs** are not covered under this Coverage Part, the **Insureds**, severally according to their respective interests, shall repay such uncovered **Defense Costs** to the Insurer, provided that nothing in this paragraph B shall limit the final non-appealable adjudication requirement in Exclusion B. Conduct of Section II. EXCLUSIONS of the GTC. If the Insurer recovers any portion of an amount paid under this Coverage Part, the Insurer shall reinstate the applicable limit of liability with any amounts recovered up to such amount paid, less any costs incurred by the Insurer in its recovery efforts.

## VI. REPORTING

Notice of a **Securityholder Derivative Demand Investigation** is optional, but only **Loss** incurred after such **Securityholder Derivative Demand Investigation** is reported is eligible for coverage under this Coverage Part. If an **Insured** elects to report any **Securityholder Derivative Demand Investigation**, any **Claim** that may subsequently arise out of any reported **Securityholder Derivative Demand Investigation** shall be deemed to have been first made during the **Policy Period** in which such investigation was first reported.

## VII. OTHER INSURANCE

A. With the exception of insurance written specifically as excess of the Limit of Liability of this Coverage Part, this Coverage Part shall be excess of and shall not contribute with any valid and collectible insurance providing coverage for **Loss** for which this Coverage Part also provides coverage, provided that any payment by an **Insured** of a retention or deductible under any such other insurance shall reduce the applicable Retention under this Coverage Part by the amount of such payment which would otherwise have been **Loss** under this Coverage Part.

JA1_013

B. This Coverage Part shall also be excess of and shall not contribute with any indemnity provided, and any valid and collectible insurance maintained, by an **Outside Entity** for an **Insured Person** serving in his capacity as such for the **Outside Entity**.

C. Any personal umbrella excess liability insurance, independent directors liability insurance or any other similar personal liability insurance available to an **Insured** shall be specifically excess of this Coverage Part.

## VIII. PRIORITY OF PAYMENTS

A. In the event that **Loss** under Insuring Clause A and any other **Loss** are concurrently due under this Coverage Part, then the **Loss** under Insuring Clause A shall be paid first.  In all other instances, the Insurer may pay **Loss** as it becomes due under this Coverage Part without regard to the potential for other future payment obligations under this Coverage Part.

B. The coverage provided by this Coverage Part is intended first and foremost for the benefit and protection of **Insured Persons**. In the event a liquidation or reorganization proceeding is commenced by or against a **Company** pursuant to United States bankruptcy law:

1. the **Insureds** hereby agree not to oppose or object to any efforts by the Insurer, the **Company** or an **Insured** to obtain relief from any stay or injunction issued in such proceeding; and

2. the Insurer shall first pay **Loss** on account of a **Claim** for a **Wrongful Act** occurring prior to the date such liquidation or reorganization proceeding commences, and then pay **Loss** in connection with a **Claim** for a **Wrongful Act** occurring after the date such liquidation or reorganization proceeding commences.

## IX. SECURITIES OFFERING

If during the **Policy Period**, a **Company** intends a public offering of securities under the Securities Act of 1933 and gives written notice to the Insurer within 30 days of the effective date of the Registration Statement for such offering, together with any additional information requested by the Insurer, the Insurer shall provide the **Company** with a quote for coverage with respect to such offering.  Coverage offered pursuant to this quote shall include coverage for **Wrongful Acts** occurring in the course of any "road show" presentation to potential investors or other similar presentation and shall be subject to additional or different terms and conditions and payment of additional premium.

## X. GLOSSARY

A. **Claim** means:

1. with respect to Insuring Clauses A and B, any investigation, evidenced by any written document, including a subpoena, target letter or search warrant, against an **Insured Person** for a **Wrongful Act**; and

2. with respect to Insuring Clauses A, B and C:

   (a) a written demand for monetary or non-monetary (including injunctive) relief, including demands for arbitration, mediation, waiving or tolling of a statute of limitations or **Extradition**;

   (b) a civil or criminal proceeding, evidenced by: (i) the service of a complaint or similar pleading in a civil proceeding; or (ii) the filing of an indictment, information or similar document or an arrest in a criminal proceeding; and

   (c) a formal administrative or regulatory proceeding, evidenced by the filing of a formal notice of charges or the entry of a formal order of investigation,

   against an **Insured** for a **Wrongful Act**, including any appeal therefrom.

The time when a **Claim** shall be deemed first made for the purposes of this Coverage Part shall be the date on which the **Claim** is first made against, served upon or received by the **Insured** or the applicable notice or order is filed or entered.

B. **Defense Costs** means that part of **Loss** consisting of:

1. reasonable costs, charges, fees (including, attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of any **Insured**) incurred in: (a) investigating, defending, opposing or appealing any **Claim** or (b) any **Securityholder Derivative Demand Investigation**; and

2. the premium for appeal, attachment or similar bonds (but the Insurer shall be under no obligation to furnish any bond).

C. **Insured** means any **Company** or **Insured Person**.

D. **Insured Person** means:

1. an **Executive**;

JA1_014

2.  an **Employee**, but only with respect to a **Claim**: (a) brought by a securityholder of a **Company** in his capacity as such; or (b) that is also brought and maintained against an **Insured Person** included in paragraph 1 above; or

3.  a holder of an equivalent position to those included in paragraph 1 above in an **Outside Entity**, while serving at the specific request or direction of the **Company**.

E.  **Loss** means the amount that an **Insured** becomes legally obligated to pay on account of any **Claim** including:

1.  compensatory damages;

2.  judgments and settlements, including a judgment or settlement awarding plaintiffs' attorneys fees, provided that with respect to any settlement including plaintiffs' attorneys fees, that portion of the settlement can be demonstrated to be reasonable, taking into consideration the nature of legal action, time and expense involved in prosecuting such action, and the likelihood of a court awarding a similar amount as part of a judgment;

3.  pre and post-judgment interest;

4.  **Defense Costs**;

5.  solely with respect to Insuring Clause A, taxes imposed by law upon an **Insured Person** in his capacity as such in connection with any bankruptcy, receivership, conservatorship or liquidation of a **Company**, to the extent such taxes are insurable by law;  and

6.  punitive, exemplary or multiplied damages, fines or penalties, if and to the extent that any such damages, fines or penalties are insurable under the law of the jurisdiction most favorable to the insurability of such damages, fines or penalties.

In determining the most favorable jurisdiction as set forth in paragraph 6 above, due consideration shall be given to the jurisdiction with a substantial relationship to the relevant **Insureds** or to the **Claim** giving rise to such damages, fines or penalties, and the Insurer shall not challenge any opinion of independent legal counsel (mutually agreed to by the Insurer and the **Insured**) that such damages, fines or penalties are insurable under applicable law.

**Loss** does not include any portion of such amount that constitutes any:

(a)  amount not insurable under the law pursuant to which this Coverage Part is construed;

(b)  cost incurred to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(c)  amount that represents or is substantially equivalent to an increase in consideration paid (or proposed to be paid) by a **Company** in connection with its purchase of any securities and assets;

(d)  tax, other than taxes described in paragraph 5 above; or

(e)  cost incurred to clean up, remove, contain, treat, detoxify or neutralize **Pollutants**.

F.  **Outside Entity** means:

1.  any non-profit entity, community chest, fund or foundation; or

2.  any other entity specifically added as an **Outside Entity** by endorsement to this Coverage Part,

that is not a **Company**.

G.  **Professional Services** means services which are performed for others for a fee.

H.  **Securityholder Derivative Demand Investigation** means an investigation by a **Company** to determine whether it is in the best interest of such **Company** to prosecute the claims alleged in a securityholder derivative demand or lawsuit. Where a **Securityholder Derivative Demand Investigation** is initiated because of a lawsuit rather than a demand, any coverage provided for **Defense Costs** on account of such **Securityholder Derivative Demand Investigation** shall in no way limit the coverage otherwise afforded under this Coverage Part to an **Insured** for **Loss** on account of a **Claim**.

J.  **Wrongful Act** means:

1.  any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by: (a) an **Insured Person** in his capacity as such; or (b) by a **Company**; or

2.  any other matter claimed against an **Insured Person** solely by reason of serving in his capacity as such.

JA1_015

Case 2:19-cv-04593-SB Document 136 Filed 05/28/21 Page 16 of 30 Page ID #:474
POLICY NUMBER: QPL0056676



QBBP-3001 (05-14)

*The Solution* **for Employment Practices Liability**
**Coverage Part Declarations**

## QBE Specialty Insurance Company
Wall Street Plaza, 88 Pine Street, New York, New York 10005
Home Office: c/o CT Corporation System, 314 East Thayer Avenue, Bismarck, North Dakota 58501

**THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**

**Item 1**: Parent Company: Stockdale Management LLC

**Item 2**: Limit of Liability

$5,000,000 per Claim
$5,000,000 in the aggregate

**Item 3**: Retention: $150,000 per Claim

**Item 4**: Pending or Prior Proceedings N/A

QBE and the links logo are registered service marks of QBE Insurance Group Limited.

JA1_016



*The Solution* for Employment Practices Liability
Coverage Part

In consideration of the payment of the premium and subject to the General Terms and Conditions, the Insurer and the **Insureds** agree as follows:

## I. INSURING CLAUSE

The Insurer shall pay, on behalf of an **Insured**, **Loss** on account of a **Claim** first made during the **Policy Period**.

## II. EXCLUSIONS

In addition to the Exclusions set forth in Section II. EXCLUSIONS of the GTC, no coverage shall be provided under this Coverage Part for **Loss** on account of that portion of a **Claim**:

A. Breach of Written Employment Contract - based upon, arising out of or resulting from any breach of any written employment contract or agreement, provided that this Exclusion A shall not apply to: 1. **Loss** to the extent an **Insured** would have been liable for such **Loss** in the absence of such written employment contract or agreement; or 2. **Defense Costs**;

B. OSHA, Workforce Notification and Labor Relations - based upon, arising out of or resulting from any violation of the responsibilities, obligations or duties imposed by the Occupational Safety and Health Act, the Worker Adjustment and Retraining Notification Act, the National Labor Relations Act or any similar law; and

C. Workers Compensation, Disability Benefits, Social Security, Unemployment - based upon, arising out of or resulting from any failure to comply with any obligation under any workers compensation, disability benefits, social security or unemployment insurance law;

Exclusions A - C above shall not apply to any **Claim** for **Retaliation**.

With respect to this Coverage Part, the following exceptions shall apply to Section II. EXCLUSIONS of the GTC:

1. Exclusion A. Bodily Injury/Property Damage shall not apply to **Loss** for any mental anguish, emotional distress or humiliation when alleged as part of a **Claim** otherwise covered under this Coverage Part; and

2. Exclusion C. ERISA and E. Pollution shall not apply to any **Claim** for **Retaliation**.

## III. OTHER INSURANCE

A. With respect to any **Claim** for an **Employment Practices Wrongful Act**, other than that portion of a **Claim** made against a leased or temporary employee or **Independent Contractor**, this Coverage Part shall be primary insurance.

B. With respect to:

1. that portion of any **Claim** made against any leased or temporary employee or **Independent Contractor**; or

2. any **Claim** for a **Third Party Wrongful Act**, where **Loss** is covered under this Coverage Part and other valid and collective insurance,

this Coverage Part shall be specifically excess of and shall not contribute with any other valid and collectible insurance policy (other than a policy that is issued specifically as excess of the insurance afforded by the Coverage Part), regardless of whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

## IV. COORDINATION OF COVERAGE

Any **Loss** covered under this Coverage Part and one or more other **Liability Coverage Parts** shall first be covered under this Coverage Part, subject to its terms, conditions and limitations.  Any remaining portion of such **Loss** shall be covered under such other **Liability Coverage Part(s)**, subject to its terms, conditions and limitations.

## V. GLOSSARY

A. **Benefits** means any payments (including insurance premiums), deferred compensation, perquisites or fringe benefits, in connection with an employee benefit plan and any other payment to or for the benefit of an employee arising out of the employment relationship. However, **Benefits** shall not include salary, wages, bonuses, commissions, **Stock Benefits** or non-deferred cash incentive compensation.

JA1_017

B. **Claim** means any:

1. written demand for monetary or non-monetary (including injunctive) relief, including demands for arbitration, waiving or tolling of a statute of limitations, reinstatement, reemployment or re-engagement;

2. civil or criminal proceeding, evidenced by: (a) the service of a complaint or similar pleading in a civil proceeding; or (b) the filing of an indictment, information or similar document or an arrest in a criminal proceeding; and

3. arbitration proceeding pursuant to an employment contract or agreement, policy or practice of a **Company**;

4. administrative, regulatory or tribunal proceeding, other than a labor, grievance or other proceeding under a collective bargaining agreement, evidenced by the filing of a formal notice of charges or the entry of a formal order of investigation; or

5. any audit of an **Insured** conducted by the United States of America Office of Federal Contract Compliance Programs ("OFCCP"),

against an **Insured** for a **Wrongful Act**, including any appeal therefrom.

The time when a **Claim** shall be deemed first made for the purposes of this Coverage Part shall be the date on which the **Claim** is first made against, served upon or received by the **Insured** or the applicable notice or order is filed or entered.

C. **Defense Costs** means that part of **Loss** consisting of:

1. reasonable costs, charges, fees (including, attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of any **Insured**) incurred in investigating, defending, opposing or appealing any **Claim**; or

2. the premium for appeal, attachment or similar bonds (but the Insurer shall be under no obligation to furnish any bond).

D. **Discrimination** means any violation of any employment discrimination law.

E. **Employment Practices Wrongful Act** means any:

1. breach of any employment contract or agreement or contractual obligation, including any contract or agreement or contractual obligation arising out of any employee handbook, personnel manual, policy statement or other representation;

2. **Discrimination**;

3. **Harassment**;

4. **Retaliation**;

5. **Workplace Tort**; or

6. **Wrongful Employment Decision**,

committed, attempted, or allegedly committed or attempted by an **Insured** while acting in his or its capacity as such.

F. **Harassment** means any:

1. sexual harassment that is made a condition of employment with, used as a basis for employment decisions by, interferes with performance or creates an intimidating, hostile or offensive working environment within, a **Company**; or

2. workplace harassment, including bullying that interferes with performance or creates an intimidating, hostile or offensive working environment within a **Company**.

G. **Independent Contractor** means any natural person working for a **Company** pursuant to a written contract or agreement between such natural person and the **Company** which specifies the terms of the **Company's** engagement of such natural person.

H. **Insured** means any **Company** or **Insured Person**.

I. **Insured Person** means any:

1. **Executive** or **Employee**; or

2. **Independent Contractor**, but only if the **Company** agrees to indemnify the **Independent Contractor** in the same manner as **Employees** for liability arising out of a **Claim**.

JA1_018

J. **Loss** means the amount that an **Insured** becomes legally obligated to pay on account of any **Claim** including:

1. compensatory damages (including back pay and front pay);

2. judgments and settlements, including a judgment or settlement awarding plaintiffs' attorneys fees, provided that with respect to any settlement including plaintiffs' attorney fees, that portion of the settlement can be demonstrated to be reasonable, taking into consideration the nature of legal action, time and expense involved in prosecuting such action, and the likelihood of a court awarding a similar amount as part of a judgment;

3. pre and post-judgment interest;

4. liquidated damages awarded pursuant to the Age Discrimination in Employment Act, Family Medical Leave Act or Equal Pay Act;

5. **Defense Costs**; and

6. punitive, exemplary or multiplied damages, if and to the extent that any such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages.

In determining the most favorable jurisdiction as set forth in paragraph 6 above, due consideration shall be given to the jurisdiction with a substantial relationship to the relevant **Insureds**, to the **Company**, or to the **Claim** giving rise to such damages, and the Insurer shall not challenge any opinion of independent legal counsel (mutually agreed to by the Insurer and the **Insured**) that such damages are insurable under applicable law.

**Loss** does not include any portion of such amount that constitutes any:

(a) amount not insurable under the law pursuant to which this Coverage Part is construed;

(b) cost incurred to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(c) future salary, wages, commissions, or **Benefits** or other monetary payments of a claimant who has been or shall be hired, promoted or reinstated to employment pursuant to a settlement, order or other resolution of any **Claim**;

(d) salary, wages, commissions, **Benefits** or other monetary payments which constitute severance payments or payments pursuant to a notice period;

(e) **Benefits** due or to become due or the equivalent value of such **Benefits**;

(f) cost associated with providing any accommodation for persons with disabilities or any other status which is protected under any law, including the Americans with Disabilities Act and the Civil Rights Act of 1964;

(g) tax, fine or penalty imposed by law; or

(h) cost incurred to clean up, remove, contain, treat, detoxify or neutralize **Pollutants**.

K. **Retaliation** means retaliatory treatment against an **Employee** of a **Company** on account of such individual:

1. exercising his or her rights under law, refusing to violate any law or opposing any unlawful practice;

2. having assisted or testified in or cooperated with a proceeding or investigation (including any internal investigation conducted by the **Company's** human resources or legal department) regarding alleged violations of law by the **Insured**;

3. disclosing or threatening to disclose to a superior or any governmental agency any alleged violations of law; or

4. filing any claim against the **Company** under the Federal False Claims Act, Section 806 of the Sarbanes Oxley Act or any other whistleblower law.

L. **Stock Benefits** means any:

1. offering, plan or agreement between a **Company** and any **Employee** which grants stock, warrants, shares or stock options of the **Company** to such **Employee**, including grants of restricted stock, performance stock shares, membership shares or any other compensation or incentive granted in the form of securities of the **Company**; or

2. payment or instrument, the amount or value of which is derived from the value of securities of the **Company**, including stock appreciation rights or phantom stock plans or arrangements,

provided that **Stock Benefits** shall not include amounts claimed under any employee stock ownership plans or employee stock purchase plans.

JA1_019

M. **Third Party** means any natural person who is not an **Insured Person**.

N. **Third Party Wrongful Act** means any sexual harassment, or discrimination based upon status protected under any anti-discrimination law, against a **Third Party** committed, attempted, or allegedly committed or attempted by any **Insured** while acting in his or its capacity as such.

O. **Workplace Tort** means any employment-related:

1. misrepresentation, defamation (including libel and slander), invasion of privacy, wrongful infliction of emotional distress, mental anguish or humiliation; or

2. negligent retention, supervision, hiring or training, failure to provide or enforce consistent employment-related corporate policies and procedures, false imprisonment, negligent evaluation, wrongful discipline or wrongful deprivation of career opportunity,

but only when alleged as part of a **Claim** for any **Wrongful Employment Decision**, breach of employment contract, **Discrimination**, **Harassment** or **Retaliation**.

P. **Wrongful Act** means an **Employment Practices Wrongful Act** or **Third Party Wrongful Act**.

Q. **Wrongful Employment Decision** means any wrongful termination, discharge of employment, demotion, denial of tenure, failure or refusal to employ or promote, or wrongful or negligent employee reference.

JA1_020

Case 2:21-cv-04447-SB Document 136 Filed 05/28/27 Page 22 of 30 Page ID #:479

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SERVICE OF SUIT CLAUSE
# CALIFORNIA

We hereby appoint Jere Keprios, c/o C.T. Corporation System, 818 West 7th Street, Los Angeles, California, 90017, as our true and lawful attorney in and for the State of California, upon whom all lawful process may be served in any action, "suit" or proceeding instituted in California by or on behalf of any insured or beneficiary against us arising out of this insurance policy, provided a copy of any process, "suit", complaint or summons is sent by certified or registered mail to:

88 Pine Street – 16th Floor, New York, NY  10005

JA1_021

Case 2:21-cv-04493-SB Document 18-3 Filed 05/28/21 Page 23 of 30 Page ID #:480

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ABSOLUTE BODILY INJURY/PROPERTY DAMAGE EXCLUSION**

This endorsement modifies insurance provided under the following:

GENERAL TERMS AND CONDITIONS

It is hereby agreed that Exclusion A. Bodily Injury/Property Damage in Section **II. EXCLUSIONS** is replaced by the following:

A.    Bodily Injury/Property Damage – based upon, arising out of or resulting from any bodily injury, mental anguish, emotional distress, humiliation, sickness, disease or death of any person or damage to or destruction of any tangible property, including loss of use thereof, whether or not such property is damaged or destroyed;

All other terms and conditions of this Policy remain unchanged.

JA1_022

Case 2:21-cv-04949-SB Document 136-3 Filed 05/28/27 Page 28 of 30 Page ID #:481

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**RELATED PARTY EXCLUSION**

This endorsement modifies insurance provided under the following:
DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

It is hereby agreed that Section **II. EXCLUSIONS** is amended by the addition of the following:

Related Party – brought by, or on behalf of Triyar Companies, LLC or its subsidiaries, affiliates, or directors and officers or any combination.

All other terms and conditions of this Policy remain unchanged.

JA1_023

**POLICY NUMBER: QPL0056676**

**Endorsement Effective Date: September 15, 2016**

QBBPP-2123 (05-14)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EMPLOYED LAWYERS EXTENSION

This endorsement modifies insurance provided under the following:

DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

It is hereby agreed that:

I.  Section **I. INSURING CLAUSE** is amended by the addition of the following:

  A.  This Policy shall include coverage for an **Employed Lawyer**, but solely with respect to an **Employed Lawyer Wrongful Act**.

  B.  The coverage provided by this endorsement is specifically excess of any other valid and collectible lawyers professional liability insurance, legal malpractice or errors and omissions insurance and shall provide insurance only in the event of the exhaustion of such other insurance due to the payment of losses thereunder.

  C.  In determining whether the Retention amount for this Coverage Part, as stated in Item 4 of the Declarations, applies to a **Claim** under this endorsement, it is presumed that the **Company** shall indemnify the **Employed Lawyer** to the fullest extent permitted by statutory or common law or the charter, by-laws, operating agreement or similar document of the **Company**.

  D.  Solely with respect to the coverage provided by this endorsement, this Policy shall not cover any **Loss** on account of that portion of a **Claim** made against an **Employed Lawyer**:

  1.  based upon, arising out of or resulting from any **Employed Lawyer Wrongful Act** which occurred at a time when the **Employed Lawyer** was not employed as a lawyer by the **Company**;

  2.  based upon, arising out of or resulting from any **Employed Lawyer Wrongful Act** if, as of the **Pending or Prior Date**, an **Employed Lawyer** knew or could have reasonably foreseen that such **Employed Lawyer Wrongful Act** could lead to a **Claim**; or

  3.  based upon, arising out of or resulting from any activities or conduct of the **Employed Lawyer** as an officer, director or governor of any entity other than the **Company**.

II.  Section **IV. LIMIT OF LIABILITY** is amended by the addition of the following:

The coverage provided by this endorsement shall be subject to a Sublimit of Liability  of $2,000,000, which shall be part of, and not in addition to, the Limit of Liability set forth in Item 2 of the Declarations of this Coverage Part.

III.  For the purposes of this endorsement only, Section **X. GLOSSARY**, is amended as follows:

  A.  The following definitions are added to Section X.

  1.  **Employed Lawyer** means any employee of the **Company** who is admitted to practice law and who is employed, or was employed, at the time of the alleged **Wrongful Act** as a full-time lawyer for, and salaried by, the **Company**.

  2.  **Employed Lawyer Wrongful Act** means any act, error, or omission by an **Employed Lawyer** in the rendering or failure to render professional legal services for the **Company**, but solely in his or her capacity as such. **Employed Lawyer Wrongful Act** shall not mean any act, error, or omission in connection with such activities by such **Employed Lawyer**: (a) which are not related to such **Employed Lawyer's** employment with the **Company**; (b) which are not rendered on behalf of the **Company** at the **Company's** written request; or (c) which are performed by the **Employed Lawyer** for others for a fee.

  3.  **Pending or Prior Date** means, for each **Employed Lawyer**, the later of September 15, 2016 or the first date that such person became an **Employed Lawyer**

  B.  The definitions of Insured Person and Wrongful Act are amended as follows:

  1.  **Insured Person** shall also include an **Employed Lawyer**.

  2.  **Wrongful Act** includes an **Employed Lawyer Wrongful Act**.

All other terms and conditions of this Policy remain unchanged.

**QBBPP-2123 (05-14)**

**Page 1 of 1**

JA1_024

Case 2:21-cv-04447-SB Document 13-6 Filed 05/28/21 Page 26 of 30 Page ID #:483

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMEND DEFINITION OF CLAIM TO INCLUDE MEDIATION**

This endorsement modifies insurance provided under the following:
 EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

It is hereby agreed that Section **V. GLOSSARY**, paragraph B. **Claim** 1. is amended by the addition of the word "mediation," after the word "arbitration,".

All other terms and conditions of this Policy remain unchanged.

**JA1_025**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMEND DEFINITION OF COMPANY ENDORSEMENT

This endorsement modifies insurance provided under the following:

GENERAL TERMS AND CONDITIONS

It is hereby agreed that:

1.  The definition of **Company** in paragraph C. of Section **XXII. GLOSSARY** is replaced by the following:

    **Company** means:

    a.  any entity acquired or created after the inception date of this Policy that Steven Yari and Shawn Yari, individually or jointly, own 50% or more of the outstanding securities representing the present right to vote for election of such entity's directors or **Managers**, or has the right, pursuant to written contract or the by-laws, charter, operating agreement to elect, appoint or designate a majority of the board of directors or **Managers**, directly or indirectly, of such entity(ies), but only for **Loss** on account of a **Claim** for a **Wrongful Act** which occurs after the date of such acquisition or creation.

    b.  the **Parent Company** and any Entity listed below:

    14925 MEMORIAL, LTD
    7277 SCOTTSDALE HOTEL, LLC
    7277 SCOTTSDALE RESIDENCES, LLC
    ALLIANCE BRENTWOOD, LP
    ALLIANCE BURBANK, LLC
    ALLIANCE FOODS HOLDINGS, LLC
    ALLIANCE FOODS, LLC
    ALLIANCE IP 360, LLC
    BASELINE ACQUISITIONS, LLC
    BROADWAY & ROOKS PARTNERS, LLC
    CCN LAND, LP
    CEIT ACQUISITIONS, LLC
    COTE, LLC
    CTC CAFE ENCINO, LLC
    CTC EXPRESS CENTURY CITY, LLC
    DAKOTA SCOTTSDALE, LLC
    DIAMOND GLOBAL HOLDINGS, LLC
    EMERALD EQUITIES, LLC
    EQUITY PARKING, LLC
    EQUITY PARTNERS GROUP, LLC
    FRI-TRIYAR, LLC
    MARKETPLACE AT SOUTH MOUNTAIN, LLC
    MONILI, LLC
    MORAGA MANAGEMENT, LLC
    NEW WAVE PRODUCTIONS, LLC
    ONYX VENTURES, LLC
    ROOKS 109, LLC
    SCOTTSDALE BEACH CLUB, LLC
    SCOTTSDALE CANAL HOLDINGS, LLC
    SCOTTSDALE CURRY, LLC

JA1_026

SCOTTSDALE RENAISSANCE, LLC
SHY EQUITIES, LLC
ST DEL RIO HOLDINGS, LP
STOCKDALE CAPITAL PARTNERS, LLC
STOCKDALE CAPITAL RE, LLC
STOCKDALE MANAGEMENT LLC
STOCKDALE-CEIT, LLC
SUPREME DYNAMICS, INC.
SV HOSPITALITY, LLC
SY EQUITIES, LLC
TEAL HOLDINGS, LLC
TEAL REALTY, LLC
TOPAZ GLOBAL HOLDINGS, LLC
TRICOASTAL PROPERTIES, INC.
TRIYAR BEACH CLUB, LLC
TRIYAR BUCKEYE HOLDINGS, LLC
TRIYAR BUCKEYE INVESTMENTS, LLC
TRIYAR CAPITAL, LLC
TRIYAR ENTERTAINMENT SCOTTSDALE I, LLC
TRIYAR FUNDING, LLC
TRIYAR HOSPITALITY LLC
TRIYAR HOSPITALITY MANAGEMENT, LLC
TRIYAR HOSPITALITY SCOTTSDALE, LLC
TRIYAR MANAGEMENT OF ARIZONA, INC
TRIYAR PARTNERS III, LLC
TRIYAR SV, LLC
TRIYAR TEMPE, LLC
TRIYAR VENTURES, LLC
TYC, LLC (DAKOTA BAR)
WHJHH, INC
TOWER 44, LLC (TALLEY PLAZA, LLC)
AS HOSPITALITY, LLC
CALIFORNIA DIAMOND, LLC
CALIFORNIA TOPAZ, LLC
CAMBRIA ALAMOSA MANAGER, LLC
CCN GP, LLC
DEERBROOK COMMONS GP, LLC (DE)
DEERBROOK COMMONS GP, LLC (TX)
PP EQUITY INVESTORS, LLC
PREMIUM POINT PARKING INVESTORS, LLC
PREMIUM POINT, LLC
RUBY MEMORIAL, INC.
S/A PARKING MANAGER, LLC
SCP FUND I MANAGER, LLC
SCP PARKING MANAGER, LLC
STDR MANAGEMENT, LLC
STOCKDALE ACQUISITIONS, LLC
STOCKDALE ASSET MANAGEMENT, LLC
STOCKDALE GALLERIA MANAGER, LLC
STOCKDALE GALLERIA MEZZ BORROWER, LLC
STOCKDALE MOB MANAGER, LLC
STOCKDALE SUGAR CREEK MANAGER, LLC
SUGAR CREEK/EPG MEZZ BORROWER, LLC
TRIYAR ENTERTAINMENT AZ, LLC
TRIYAR ENTERTAINMENT, LLC
TRIYAR HOLDINGS, LLC
WPRE I TRIYAR HOLDINGS I, LLC
WPRE I TRIYAR INVESTORS LLC
WPRE I TRIYAR TEMPE, LLC
SCP/ACE PARKING JV, LLC

**Page** 2 of 3

**JA1_027**

7277 SCOTTSDALE HOTEL PARENT, LLC
225 S BEVERLY, LLC
1802 TRAVIS HOLDINGS, LLC
413 BEDFORD DR. LLC
NORTH HOUSTON INTERNATIONAL, LLC
SUGAR CREEK TIC INVESTORS, LLC
SUGAR CREEK/EPG, LLC
YARICO, INC

2. The definition of **Subsidiary** in paragraph P. of Section **XXII. GLOSSARY** is deleted.

3. Any reference to **Subsidiary** is deemed deleted.

All other terms and conditions of this Policy remain unchanged.

**JA1_028**

**POLICY NUMBER:   QPL0056676**
**Endorsement Effective Date: September 15, 2017**                                       **QBBP-2028 (05-14)**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## DECLARATIONS AMENDMENT – POLICY PERIOD

In consideration of an additional premium of $23,188 it is hereby agreed that **Item 2** of the General Terms and Conditions Declarations is replaced by the following:

**Item 2**: Policy Period
From:   September 15, 2016      To:   November 15, 2017
At 12:01 A.M. Standard Time at the mailing address stated in Item 1

All other terms and conditions of this Policy remain unchanged.

JA1_029