UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRIYAR HOSPITALITY MANAGEMENT, LLC, STEVEN YARI, and SHAWN YARI,<br><br>    Plaintiffs,<br><br>    v.<br><br>QBE SPECIALTY INSURANCE CO.,<br><br>    Defendant. | Case No. 2:21-cv-04474-SSS-SKx<br><br>**ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT [Dkt. 36]** |

This case concerns Defendant QBE Specialty Insurance Company's ("QBE") denial of coverage to Plaintiff Triyar for a $3.3 million indemnification payment made to its owners and co-Plaintiffs Steven and Shawn Yari. Plaintiffs maintain that the indemnification payment should be covered under the insurance policy issued to them by QBE (the "Policy"). They assert two causes of action for breach of contract and declaratory relief. [Dkt. 1].

Now before the Court are the parties' cross-motions for summary judgment. [Dkt. 36]. Each side has also submitted a supplemental memorandum. [Dkt. 42; Dkt. 43]. Plaintiffs ask that the Court award them damages in the full amount of Triyar's indemnification payment to the Yaris, plus prejudgment interest. QBE asks that the Court dismiss Plaintiff's action in its entirety.

The Court heard oral argument from both parties at a hearing conducted on December 9, 2022. [Dkt. 51]. Upon review of the written materials submitted and in consideration of the arguments presented at the hearing, both motions are **DENIED**.

## I. BACKGROUND

### A. The QBE Insurance Policy

Plaintiffs seek coverage under Side B of the Policy, which provides "Corporate Reimbursement Coverage for Indemnification of Insured Persons." [Dkt. 36-3].

The Policy's Insuring Clause states, with respect to Side B, that "[t]he Insurer shall pay, on behalf of a Company, Loss on account of a *Claim first made during the Policy Period* to the extent the Company pays or indemnifies an Insured Person for such Loss" (emphasis added). The Policy Period began on September 15, 2016 and ran until November 15, 2017. Triyar is designated as an insured Company under the Policy.

The Policy further establishes that "[a]ll Related Claims shall be deemed a single Claim first made during the policy period in which the earliest of such Related Claims was…first made." It defines Related Claims as "all Claims based upon, arising out of or resulting from the same or related, or having a common nexus of, facts, circumstances or Wrongful Acts."

In a section of the Policy's General Terms and Conditions, separate from its Insuring Clauses, it provides that "[n]otice of any Claim… is considered timely when reported to the Insurer as soon as practicable after the Parent Company's chief executive officer or chief financial officer first becomes aware of such Claim."  However, the "Insurer shall not assert that notice of a Claim was untimely unless the Insurer is materially prejudiced by the untimely notice. However, in no event shall any notice be provided later than… 60 days after the [date of] expiration or termination" of the "applicable Liability Coverage Part."

**B.     The 2017 and 2019 Judgments**

In October 2014, Triyar filed suit against WSI (not a party to this suit) in California state court, seeking to enforce the parties' agreement for the sale and purchase of a Los Angeles hotel.  [Dkt. 36 at 3, 4].  The same agreement provided that in the event of litigation between Triyar and WSI, the prevailing party would be entitled to attorney's fees and costs.

The state court entered judgment in favor of WSI in December 2016.  On February 21, 2017, it entered an order (the "2017 Judgment") directing Triyar to pay WSI $2,172,615 in fees and costs.  Triyar did not satisfy the judgment, nor did it notify QBE.  [Dkt. 36 at 42].

In September 2019, the Court amended the still-unpaid 2017 Judgment to add the Yaris as debtors (the "2019 Judgment") after concluding that the Yaris were "alter egos" of Triyar.  After the 2019 Judgment was affirmed on appeal, the Yaris satisfied it in full.  In the intervening two and a half years, enough interest had accumulated that the total owed had grown to $3,390,802.92.  In

May 2020, Triyar indemnified the Yaris for the 2019 Judgment; Triyar reported both Judgments to QBE for the first time on November 30, 2020. [Dkt. 1-4].

QBE refused coverage for the indemnification payment. In its letter denying coverage, it asserted that it was not timely notified of the original 2017 Judgment. On May 28, 2021, Plaintiffs filed this lawsuit against QBE. [Dkt. 1].

### C. The Instant Litigation

The parties principally dispute (1) whether the 2017 and 2019 Judgments constitute "Claims" within the Policy's definition; (2) whether the Judgments, if they are indeed "Claims," were timely reported to QBE; and (3) if the Judgments were not timely reported, whether QBE may assert untimeliness as the basis for refusing coverage to Plaintiffs.

The Court finds that both Judgments are Claims but that they were not timely reported to QBE. It further concludes that California's "notice-prejudice" rule applies to the policy such that QBE must demonstrate that it was prejudiced by Plaintiffs' late notice in order to deny coverage for that reason. Based on the record developed in this case, a reasonable jury could find for either party on the question of prejudice. Therefore, both motions are **DENIED.**

## II. EVIDENTIARY ISSUES

In determining whether to grant or deny a motion for summary judgment, a court may only consider facts that would be admissible as evidence in a trial. *See* Fed. R. Civ. P. 56(e); *Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992); *Beyene v. Coleman Sec. Servs. Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

QBE has filed two sets of evidentiary objections to certain exhibits submitted by Plaintiffs in connection with these cross-motions. First, it objects to seven exhibits containing extrinsic evidence Plaintiffs have submitted with the cross-motions for summary judgment. The identified Exhibits are (1) a July 2016 insurance policy marketing brochure issued by QBE [Exh. 13 to Dkt. 36]

and (2) insurance policies issued by QBE affiliates other than the defendant in this case [Exh. 15-20 to Dkt. 36]. Plaintiffs offer these extrinsic materials in support of their argument that the Policy did not establish an enforceable deadline by which they were obligated to *report* their Claims in order to receive coverage.

Under California law,[1] a court should interpret a contract so as to give effect to the "objective intent" of the parties "as it existed at the time the contract was executed." *Lust v. Animal Logic Entertainment*, No. 17-00308, 2021 WL 6618677 at *5 (C.D. Cal. Aug. 25, 2021), citing *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1125 (2008). Usually, objective intent is determined "solely by reference to the contract's terms." *Id.* Extrinsic evidence is admissible to aid in interpretation only if a court first concludes some material term is ambiguous as a matter of law. *Id.* A term is considered ambiguous only if it is "capable of two or more constructions, both of which are reasonable." *Congdon v. Uber Technologies, Inc.*, 291 F.Supp.3d 1012, 1021 (N.D. Cal. 2018), citing *TRB Invs., Inc. v. Fireman's Fund Ins. Co.*, 40 Cal.4th 19, 50 (2006).

Plaintiffs do not argue here that the Policy's reporting requirement and associated reporting deadline are in any way ambiguous. Rather, they argue that the notice-prejudice rule, as a fundamental principle of California public policy, prohibits QBE from relying on these provisions of the contract to deny coverage. [Dkt. 36 at 45-46]. Absent ambiguity in the Policy, the Court cannot consider the materials Plaintiffs have provided.

---

[1] Plaintiffs and QBE agree that California contract law governs this dispute. [*See* Dkt. 36 at 21-22].

Second, QBE objects to a declaration filed by Plaintiffs [Dkt. 43-1] in support of their supplemental memorandum. [Dkt. 45]. Plaintiffs offer this declaration in support of their arguments that the Judgments fall within the Policy's definition of a Claim. Because the Court is able to resolve this aspect of the dispute in Plaintiff's favor without considering this additional declaration, *see* Part IV-A below, it need not rule on its admissibility as evidence.

## III. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A factual issue is 'genuine' when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is 'material' when its resolution might affect the outcome of the suit under the governing law." *Headlands Reserve, LLC v. Center for Natural Lands Management*, 523 F.Supp.2d 1113, 1122-23, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992).

## IV. DISCUSSION

**A. The 2017 and 2019 Judgments Both Constitute "Claims" Under the Policy.**

As an initial matter, QBE disputes that either Judgment constitutes a covered "Claim" for the purposes of the Policy.

The Policy defines a "Claim" to include any "written demand for monetary or non-monetary…relief" against an "Insured for a Wrongful Act." It further provides that an "Insured" may include an insured "Company" or an

"Executive" of an insured Company. An "Executive" is defined as a "duly elected or appointed director, officer, Manager…or [person] in a functionally equivalent or comparable role."

Clearly, both Judgments are "written demands" for "monetary relief." Additionally, both are written demands made against Insured parties. Triyar is undisputedly an Insured Company under the Policy. And while the Yaris are technically "members" of Triyar (a limited liability company) rather than "director[s], officer[s], or Manager[s]," they are the company's owners and indeed were added to the 2019 Judgment as "alter egos" of Triyar. Because they play a role "functionally equivalent" to that of any other type of Executive listed in the Policy's definition, the Yaris qualify as "Insured Persons."

Although QBE briefly contends that the Judgments do not arise from "Wrongful Acts," these arguments are unpersuasive and rely on implausibly narrow understandings of what reasonably qualifies as an "act" in the ordinary sense of the word.[2] [Dkt. 36 at 27-28 (2019 Judgment); 29-30 (2017 Judgment)]. The Court concludes that both Judgments are Claims under the QBE Policy.

**B. Plaintiffs Did Not Timely Report their Claims to QBE.**

As noted above, the Policy provides coverage only to Claims "first made against an Insured" during the Policy Period. The 2017 Judgment was first entered against Triyar in February 2017, which was undisputedly within the

---

[2] The Policy defines a "Wrongful Act" as (a) "Any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed" by either "an Insured Person in his capacity as such" or by a "Company" or (b) "Any other matter claimed against an Insured Person solely by reason of serving in his capacity as such."

Policy Period. The 2019 Judgment was entered (and therefore, "made against an Insured") long *after* the close of the Policy Period.

The parties agree that if the 2017 and 2019 Judgment both qualify as "Claims," they would constitute "Related Claims" so that they should be considered a single Claim "made" at the time the 2017 Judgment was entered. QBE therefore contends that because Plaintiffs did not report the 2017 Judgment within sixty days of the close of the policy period, the 2019 Judgment must also be considered untimely. [Dkt. 36 at 42].

The Court agrees. In *Westrec Marina Management, Inc. v. Arrowood Indemnity Co.*, the California appellate court considered the effect of a "single claim" provision on a provision limiting coverage to claims "first made" during the policy period. 163 Cal.App.4th 1387 (2008). The insured plaintiff had purchased two insurance policies from the insurer-defendant. The first policy provided coverage from July 2002 to July 2003, while the second provided coverage from July 2003 to July 2004. Both of the policies in *Westrec*, just like the QBE Policy at issue here, provided "coverage for losses incurred in connection with claims *first made* during the policy period and reported within 30 days after the expiration of the policy" (the "first made" provision). Both further stated that "all claims arising from the same events or series of related facts would be deemed a single claim" (the "single claim" provision). *Id.* at 1389-90.

During the period of the first policy, the insured plaintiff received a letter from the attorney of a former employee stating that she intended to file suit. The plaintiff failed to report this letter to its insurer. During the second policy period, the former employee initiated the threatened lawsuit. The plaintiff tendered its defense, then sought indemnification from its insurer during the period of the second policy. The insurer denied coverage on the grounds that the plaintiff had failed to provide timely notice of the original letter.

The trial court found for the insurer, and the appellate court affirmed. It concluded that the lawsuit and the letter individually qualified as "claims" under the policy, and pursuant to the "single claim" provision, "constituted a single claim that was first made at the time of the…letter." *Id.* at 1393. Because the plaintiff had received the letter during the first policy period but did not notify the insurer within 30 days of its expiration, the plaintiff's subsequent notice of the lawsuit during the second policy period was untimely.

Because the QBE Policy includes "first made" and "single claim" provisions indistinguishable from those at issue in *Westrec*, the Court applies *Westrec*'s reasoning here and finds that the 2019 Policy was not timely reported to QBE.

**C. The Notice-Prejudice Rule Applies to QBE's Denial of Coverage under the Policy.**

    **1.**     **"Claims-Made" Policies under California Law.**

Professional liability insurance policies generally fall into one of two categories: "occurrence" policies and "claims-made" policies. *See, e.g., Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002). "Occurrence" policies provide coverage for events that take place during the policy period "even if they lead to claims years after the policy period." *Id.* "Claims-made" policies provide coverage for claims that are "made within the policy period, regardless of when the events that caused the claim to materialize first occurred." *Id.*, citing *Burns v. Int'l Ins. Co.*, 929 F.2d 1422, 1424 n.3 (9th Cir. 1991).

Claims-made policies can be further classified as either "*claims made-and-reported*" policies, which require that claims be reported within the policy period, or general claims-made policies, which contain no such reporting requirement. *Operating Eng'rs*, 307 F.3d at 955-56.

Claims made-and-reported policies provide coverage only for those claims made against the insured *and* reported to the insurer within the policy period. General claims-made policies do not contain such a reporting requirement. *Id.*

To establish a reporting requirement, the insurer generally must draft the policy so that timely reporting is an element of, or necessary condition precedent to, coverage. *See Westrec*, 163 Cal.App.4th at 1394 (insuring clause provided that the insurer would "provide coverage only for claims "first made and…reported" in accordance with other policy terms"); *Helfand v. National Union Fire Insurance Co.*, 10 Cal.App.4th 869, 886 (1992) (defining the date of a covered "loss" within "the meaning of this policy" as the "date on which the Company ... or the Insureds *shall give written notice to the Insurer* as hereafter provided") (emphasis added); *Illinois Union Insurance Co. v. Brookstreet Securities Corp.*, No. 07-01095, 2009 WL 10671583 at *6 (C.D. Cal. Nov. 20, 2009) ("The Insured shall, *as a condition precedent to their rights* under the Policy, *give to the Insurer written notice of any Claim made against the Insured*…during the Policy Period") (emphasis added).

General claims-made policies often include terms requiring the insured to notify the insurer of any claims as 'soon as practicable,' or even within a certain number of days. Such a separate notice provision does not, however, transform a contract into a claims made-and-reported policy. *NewLife Sciences, LLC v. Landmark American Insurance Company*, No. 13-05145, 2014 WL 631141 at *4 (N.D. Cal. Feb. 18, 2014).

Importantly, claims-made policies are subject to California's notice-prejudice rule while claims made-and-reported policies are not. *Centurion Medical Liability Protective Risk Retention Group Inc. v. Gonzalez*, 296 F.Supp.3d 1212 at 1218 (C.D. Cal. 2017). California's notice-prejudice rule requires an insurer to prove that the insured's late notice of a claim has

substantially prejudiced its ability to investigate and negotiate payment for the insured's claim. A finding of substantial prejudice will generally excuse the insurer from its contractual obligations under the insurance policy. The rule is considered a "fundamental public policy" of this state, favoring "compensation of insureds over technical forfeiture" and "grounded in policy concerns specific to the insurance industry." *Pitzer College v. Indian Harbor Ins. Co.*, 8 Cal.5th 93, 102 (2019).

California courts exempt "claims made-and-reported" policies from the notice-prejudice rule on the grounds that the application of this rule to such a policy would override an explicit constraint upon the scope of coverage offered and "materially alter the insurer's risk." *Centurion Medical Liability*, 296 F.Supp.3d at 1218, citing *Helfand*, 10 Cal.App.4th 869 at 888; *see also Pacific Employers Ins. Co. v. Superior Court*, 221 Cal.App.3d 1348, 1358-59 (1990) (application of the notice-prejudice rule would provide an "extension of coverage to the insured gratis, something for which the insurer has not bargained.").

### 2. The QBE Policy is a General Claims-Made Policy.

QBE asserts that the Policy is a claims made-and-reported policy exempt from the notice-prejudice rule, while Plaintiffs believe the notice-prejudice rule applies and QBE must demonstrate prejudice to deny coverage of the 2019 Judgment due to untimely reporting.

Here, as previously noted, the Policy's Insuring Clause describes covered Claims only in terms of whether they are *made* against the Insured during the Policy Period. The Clause does not constrain coverage to those claims also reported during that time, nor does it indicate that the insurer's obligation to provide coverage is triggered by the insured's report. *See NewLife Sciences*, 2014 WL 631141 at *3-4.

The Policy does, as QBE notes, include a subsection entitled "Reporting" which instructs the insured to report any Claim within sixty days of the close of the Policy Period. However, this requirement is set forth in a provision separate from the Insuring Clause and is not otherwise designated as an essential precondition to the insured's right to coverage.

The Court therefore agrees with Plaintiffs that the Policy is properly classified as a general claims-made policy. Therefore, QBE must establish substantial prejudice to deny coverage due to untimeliness.

### D. QBE Has Not Demonstrated Substantial Prejudice as a Result of Plaintiffs' Untimely Reporting.

QBE argues that it was prejudiced because Plaintiffs' delayed reporting deprived it of the opportunity to oppose and defend against WSI's 2019 motion to add the Yaris to the Judgment as debtors. QBE represents that, had it been timely notified of the 2017 Judgment, it could have decided "whether to attempt to negotiate and resolve the judgment before the Motion was litigated in earnest and ultimately decided against the Yaris." Instead, over the time it took to litigate the Motion and exhaust the Yaris' available appeals within the state court system, California's statutory 10% interest rate added over $1 million to the amount Triyar had originally owed WSI. [Dkt. 36 at 42, 43].

However, QBE has also maintained from the outset that it would have excluded the 2017 Judgment from coverage even if it had been timely reported. [Dkt. 1-5 at 7] ("We note the Underlying Complaint was asserted by Triyar against WSI and would not qualify as a Claim for a Wrongful Act against an Insured.").

Where, as here, the insurer "asserts that the underlying claim is not a covered occurrence or is excluded from basic coverage" it may establish substantial prejudice only by demonstrating that, "in the event that a timely tender of the defense [in the underlying action] had been made, it would have

undertaken the defense," *Safeco Ins. Co. v. Parks*, 170 Cal.App.4th 992, 1004 (2009), and "notwithstanding a denial of coverage or reservation of rights…would have settled the claim for less or taken steps that would have reduced or eliminated the insured's liability." *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal.App.4th 715, 761 (1993).[3]

   Where an insurer indicates that it would have relied on a policy exclusion to decline a defense tendered by the insured, a trial court may conclude that the insurer was not necessarily prejudiced by late notice and deny summary judgment in favor of the insured. *Safeco Ins. Co.*, 170 Cal.App.4th at 1004 (2009). The Court finds that the issue of whether QBE was prejudiced remains a question of fact that cannot be resolved on the instant cross-motions.

---

[3] QBE cites to *Pitzer College v. Indian Harbor Ins. Co.* for the proposition that an "insurer left without control of its insured's defense or settlement under a claims-made policy has been inherently prejudiced by the lack of timely notice," 8 Cal.5th at 108. [Dkt. 36 at 41]. But crucially, the insurance contract in *Pitzer* required the insured to "obtain [the insured's] written consent before incurring expenses, making payments, assuming obligations, and/or commencing remediation due to a [covered event]." The *Pitzer* court concluded that this clause rendered "insurer's duties to defend and settle a lawsuit…crucial to its coverage obligations." *Id.* The QBE Policy contains no such "consent provision," and so the Court cannot conclude that QBE suffered equivalent *inherent* prejudice.

## E. CONCLUSION

For the reasons set forth above, the parties' motions for summary judgment are **DENIED**. [Dkt. 36]. The Court previously vacated all trial and pretrial dates in this matter and directed the parties to prepare and file a joint status report on or before November 28, 2022, addressing proposed pretrial and trial dates. [Dkt. 49]. The parties failed to do so. Following this order, the parties are **ORDERED** to file a joint status report with proposed trial and pretrial dates, a revised trial estimate, and any other pertinent information no later than **January 28, 2023.**

**IT IS SO ORDERED.**

Dated: January 17, 2023

SUNSHINE S. SYKES
United States District Judge